852 F.2d 361
 57 USLW 2132, 116 Lab.Cas. P 56,411,
3 Indiv.Empl.Rts.Cas. 936
 Sharon K. BOWER, Barbara A. Montgomery, Earl J. Ross,
Linwood A. Fuller, III, Cynthia St. Julian, Debra
Huskey, Jerry Sevem, Michael W.
Strecker, Appellants,
B. Mike La Jeuness,
Robin G. Brewster, Florence Frame, Christine W. Brown,
William Terry Moore, Myra J. Miller, Cynthia
Schaben, Appellants,
Thomas L. Talmage,
Shirley Joann Smith, Gary M. Roland, Kathryn Arlene Talken,
Bernice M. Lackman, Aimee Klebba, Florence
Garriott and Barbara D. Green, Appellants,
v.
AT & T TECHNOLOGIES, INC., Appellee.
 No. 87-1541.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1988.
Decided July 25, 1988.
 
 Patricia Cohen, St. Louis, Mo., for appellants.
 Richard E. Jaudes, St. Louis, Mo., for appellee.
 Before HEANEY and WOLLMAN, Circuit Judges, and BRIGHT, Senior Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Appellants, former telephone repair employees of AT & T Technologies, Inc., (AT & T) allege that AT & T promised them at-will clerical positions after their initial jobs were phased out. After AT & T did not provide such positions to appellants, they brought suit seeking damages and an injunction requiring AT & T to hire them into the clerical positions. AT & T brought a motion for summary judgment and argued that even if such promises had been made, they could not serve as a basis for relief, in any respect, under Missouri law. A United States Magistrate agreed with AT & T and dismissed appellants' suit. We reverse.I. Facts
 
 
 2
 The following facts were assumed for purposes of the summary judgment motion below.
 
 
 3
 Prior to November, 1984, appellants, 23 telephone repair persons, were employed by AT & T at its St. Louis Service Center (Service Center) to repair telephones rented to customers of local telephone operating companies. Appellants were long-term employees, some with as much as fourteen years of service. With the court-ordered divestiture of AT & T's subsidiaries underway, AT & T's customers had the option to purchase their own telephones. Thus, the need for employees to repair telephones was reduced, and in response, AT & T began to close its service centers around the country.
 
 
 4
 On or about September 14, 1984, AT & T called a meeting of its union telephone repair employees at the Service Center. The meeting was conducted by AT & T agents, Regional Manager Warren Courtade and Shop and Warehouse Superintendent Don Herman. Appellants were told that AT & T would be closing the shop and warehouse facility in the near future and that they would be laid off. Courtade and Herman, however, told appellants that AT & T would continue to operate other departments at its St. Louis County facility and that entry level clerical positions would become available in those departments.
 
 
 5
 AT & T's agents specifically requested that appellants continue working in their present positions until the plant closed and promised to rehire appellants into "M-10" clerical positions as soon as the warehouse where they worked was converted into office space. M-10 was a classification in AT & T's employment scheme with a wage rate of $7.10 an hour. These jobs would be non-union, at-will positions. Courtade and Herman advised the employees that when they were rehired, their seniority would be "bridged" and pension and other benefits would remain intact. The agents further guaranteed that appellants would be given preference for these clerical jobs over new applicants.
 
 
 6
 Between September 14, 1984 and November 4, 1984, the date the plant closed, AT & T's agents continued to assure appellants that they would be rehired into M-10 clerical positions as soon as possible. Appellants continued to work as requested and were terminated from their positions on November 9, 1984. At the request of AT & T's agents, appellants maintained contact with AT & T's personnel department and their former supervisors. They were continuously reassured that they would be rehired as soon as possible and encouraged to wait for the promised jobs. AT & T's agents continued to repeat the promise of rehire throughout the winter and spring of 1985. During this period, appellants took action in reliance on the promises, including turning down job offers and delaying their search for other employment.
 
 
 7
 In May of 1985, appellants were notified for the first time that they could no longer rely on AT & T's promise of rehire and that they would be required to take and pass a test in order to be considered for re-employment. In April and May of 1985, and prior thereto, AT & T commenced hiring new applicants for the entry level clerical positions promised to appellants. None of the appellants have been rehired.
 
 
 8
 Each of the appellants seeks $50,000 compensatory damages and injunctive relief that each be hired to the appropriate positions. Appellants filed the instant case in the Circuit Court of St. Louis County, Missouri. AT & T removed the action to federal court on the basis of diversity jurisdiction, 28 U.S.C. Secs. 1441, 1332 (1982). Pursuant to 28 U.S.C. Sec. 636(c), the parties subsequently referred the matter to United States Magistrate David Noce. On March 27, 1987, Magistrate Noce granted AT & T's motion for summary judgment based on these facts. Appellants now appeal that ruling to this court.
 
 II. Discussion
 A. Breach of Contract
 
 9
 Appellants contend that AT & T breached an oral contract of employment and is hence required to employ appellants and pay damages to them. However, in Morsinkhoff v. De Luxe Laundry & Dry Cleaning Co., 344 S.W.2d 639 (Mo.Ct.App.1961), the court held that an employer could not be held liable on a breach of contract theory for a promise of future at-will employment because such liability would not exist if the at-will employee were discharged without reason one hour, one day, or one week after commencing his employment.
 
 
 10
 Appellants argue that Morsinkhoff is no longer valid in light of the Missouri appellate court's decision in Arie v. Intertherm, Inc., 648 S.W.2d 142 (Mo.Ct.App.1983), holding that a discharged employee could recover against her employer for wrongful discharge where she was terminated in violation of rules in an employee handbook and because she had exercised her rights under the Missouri worker's compensation law. However, Arie and the cases following it do not, as appellants contend, undercut the vitality of Morsinkhoff. Unlike Arie, appellants have not alleged the existence of a contractual or statutory right to employment under certain terms and conditions which were allegedly violated. Appellants do not allege that they were not hired for unlawful reasons. They merely allege that they were not hired after AT & T promised to rehire them. Therefore, Arie and its progeny do not apply in this context.
 
 B. Promissory Estoppel
 
 11
 Appellants alternatively contend that, even if AT & T's representations of future employment do not represent legally enforceable contractual guarantees, appellants may nevertheless receive the relief they request based on the theory of promissory estoppel. While we disagree with the appellants' contention that the substance of the contract can be fully enforced on the basis of promissory estoppel, we do believe they can recover damages based on their reasonable detrimental reliance on AT & T's promise of future employment.
 
 
 12
 AT & T contends that the doctrine of promissory estoppel cannot operate to provide plaintiffs any relief. First, they argue that Missouri's ban on enforcing an oral contract for at-will employment cannot be circumvented through the doctrine of promissory estoppel. Second, AT & T argues that the promises involved in this case are not sufficiently definite to afford appellants relief.
 
 
 13
 In terms of this first proposition, AT & T cites Walker v. Modern Realty, 675 F.2d 1002 (8th Cir.1982); Tippit v. Jepco, Inc., 726 S.W.2d 877 (Mo.Ct.App.1987); and Morsinkhoff. While these cases support the proposition that the doctrine of promissory estoppel cannot reanimate an oral promise into a fully enforceable contract, they do not support AT & T's contention that appellants cannot recover damages sustained in detrimental reliance on AT & T's promises.
 
 
 14
 In Walker and Tippit, it is true the respective courts declined to provide claimants with damages sustained in reliance on an offer for at-will employment. However, both cases involve situations in which the claimant had been hired and thus the question of reliance on an unfulfilled promise to hire was not before the respective courts. Clearly, in a case in which the claimant has actually been hired, the employer has complied fully with his obligation. Should the employer decide after hire to discharge the employee or change the terms of employment, she is completely within her rights and in utter compliance with her promise. Much different, however, is the situation presented here. In the present dispute, AT & T has promised to hire the appellants to at-will positions. That AT & T may shortly thereafter fire them at-will--while perhaps diminishing the security or value of the employment--does not fully eradicate the binding quality of its promise. Clearly, a contract which by its terms can be immediately terminated after it is commenced precludes a claimant from maintaining an action upon discharge after hire. This, however, does not prevent the claimant from recovering damages sustained in reliance on a clear and unambiguous promise that is broken. While, in practical effect, it may be hard to distinguish the case in which an employee is fired a day after beginning work from the situation in which a potential employee is prevented from assuming a promised at-will position, the cases are different. In the former case, the employer has completely fulfilled his promise; in the latter, the promise has not been kept in any respect. In the end, we believe this distinction sufficient to tip the balance in favor of the burdened employee who has relied to his detriment on the unkept promise of his employer. Such a rule, we believe, encourages employers to take such promises seriously.
 
 
 15
 Next, the Morsinkhoff case properly understood only asserts that promissory estoppel cannot be used to "outflank" the contract rule outlined above by serving to reanimate a promise for at-will employment into a fully enforceable contract. We find nothing in Morsinkhoff that precludes a court from awarding damages on the basis of reasonable detrimental reliance on a promise not otherwise specifically enforceable.
 
 
 16
 In Morsinkhoff, the court began by stating that under Missouri law, an individual employed under a contract for at-will employment can be discharged for any reason after he is hired and no action can be maintained upon such discharge.[1] The court then declared that the claimants could not "outflank" this principle by "reanimating" the unenforceable contract by means of the doctrine of promissory estoppel. To make the contract viable by such a mechanism, the court found, would overrule a long line of cases holding that the terms of a contract for employment at-will could not be specifically enforced.[2] Underlying this rule, said the court, was the realization that there would be no mutuality of obligation if such an unenforceable contract were reanimated.[3] The court believed that if the contract was made fully enforceable through promissory estoppel, the employee would have an advantage over the employer, for the employer would now be bound to the agreement, while the employee could quit the position at any time and would not be bound.
 
 
 17
 While this logic is sound, it cannot be extended to forbid recovery based on reasonable detrimental reliance on an unkept promise not otherwise fully enforceable. On the contrary, the notion of mutuality or fairness actually cuts in favor of recovery based on such reliance. For, if damages sustained in reasonable reliance on an employer promise were not available, the effect of such a rule would be to allow the employer to take advantage of whatever benefits might accrue to him by his inducing a potential employee to leave behind home and/or steady employment while at the same time being completely free of any obligation to keep his word.
 
 
 18
 The Morsinkhoff court concludes by observing the practical difficulties in determining damages stemming from a breach of a contract for at-will employment before the term of the contract begins.
 
 
 19
 If the [reanimated] contract is breached before performance begins, what shall be the extent of recovery? * * * The damages resulting from the loss of a promised employment that may be terminated one hour, one day, or one week after it is begun, are, we think, so inconsequential as to be impossible of either admeasurement or allowance. The Missouri cases have not allowed recovery such instances.
 
 
 20
 344 S.W.2d at 644-45 (emphasis added).
 
 
 21
 Clearly, the court in this passage was discussing damages sustained from the breach of contract fully reanimated by the doctrine of promissory estoppel, not damages sustained by reasonable detrimental reliance on a promise not otherwise fully enforceable. Moreover, the recovery the court finds prohibited by Missouri law is clearly recovery by an employee after he has been hired. This is all that the court could have meant by this statement, for, prior to the time of Morsinkhoff, there is no Missouri case law which prohibits an employee from recovering reasonable reliance damages on an unkept promise of future employment at-will. Clearly, then, Morsinkhoff does not forbid any recovery on the theory of reasonable reliance on the employer's promise.
 
 
 22
 Further, were we to declare that Morsinkhoff forbade any recovery based upon such reliance, we would find ourselves in conflict with well established Missouri law. In Mahoney v. Delaware McDonald's Corp., 770 F.2d 123, 126 (8th Cir.1985), this court, applying Missouri law in diversity, stated:
 
 
 23
 The [Missouri] courts have also quoted favorably from section 90 of the Restatement of Contracts, indicating that the "promise" requirement [in terms of promissory estoppel theory of recovery] will * * * be satisfied by a promise which the promisor "should reasonably expect to induce action or forebearance of a definite and substantial nature."
 
 
 24
 Id. at 126.
 
 
 25
 The court continued: "Under the doctrine of promissory estoppel, damages may be measured by the extent of the promisee's reliance. Restatement (Second) of Contracts Sec. 90 comment d (1979)." Id. at 127.
 
 
 26
 In examining the basis of our holding in Mahoney, we find Section 90(1) of the Restatement of Contracts (Second) (emphasis added) provides:
 
 
 27
 A promise which the promissor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
 
 
 28
 Next, Comment d (emphasis added), also cited by the court, states:
 
 Partial Enforcement
 
 29
 A promise binding under this section is a contract, and full-scale enforcement by normal remedies is often appropriate. But the same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. In particular, relief may be sometimes limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise. * * * Unless there is unjust enrichment of the promisor, damages should not put the promisee in a better position that performance of the promise would have put him. * * * In the case of a promise to make a gift it would rarely be proper to award consequential damages which would place a greater burden on the performance would have imposed.
 
 
 30
 Further, Illustration 8 of comment d provides the following example of detrimental reliance on a promise which would support an award of damages:
 
 
 31
 A applies to B, a distributor of radios manufactured by C for a "dealer franchise" to sell C's products. Such franchises are revocable at will. B erroneously informs A that C has accepted the application and will soon award the franchise, that A can proceed to employ salesmen and solicit orders, and that A will receive an initial delivery of at least 30 radios. A expends $1,150 in preparing to do business, but does not receive the franchise or any radios. B is liable to A for the $1,150 but not for the lost profit on 30 radios.
 
 
 32
 Comment d to the Restatement (Second) of Contracts Sec. 90 is a part of Missouri law. Moreover, Illustration 8 of Comment d is "on all fours" with the present case and supports appellants' recovery. Clearly, the dealer franchise, revocable at-will, is functionally analogous to the situation present here involving a promise for employment at-will. As in the present case, the contract cannot be fully enforced because the franchisor (like the employer here) can revoke it at will. However, justice requires that the disappointed franchisee receive recompense for damages sustained in reliance on representations by the franchisor. Appellants here also deserve to be made whole for whatever damages they can prove were suffered in reliance on AT & T's representations of future employment.[4]
 
 
 33
 We move at this point to AT & T's second contention, i.e. that the promises involved in this case are not sufficiently definite to provide relief. The cases cited by AT & T in terms of this argument involve efforts to fully enforce the promises in a contractual sense. Clearly, we are not attempting to do this. However, we note in passing that the facts hereto stipulated describe an extremely detailed promise.
 
 
 34
 Specifically, AT & T promised appellants that they would be rehired into M-10 clerical positions--positions which were compensated at a rate of $7.10 an hour. Appellants were advised that these jobs would be non-union, at-will positions. AT & T told appellants that they could begin work as soon as the warehouse where they were working was converted into office space. While it may be true that the company did not provide an exact date of re-employment, this offer was perhaps as specific as AT & T could then have made. Finally, appellants were advised that when they were rehired, their seniority would be "bridged" and their pension and other benefits would remain intact, and were further guaranteed that they would be given preference for these clerical jobs over new applicants.
 
 
 35
 In the end, we find that the promises made by AT & T were extremely detailed and, thus, while we need not reach the question of whether these representations were sufficiently precise to fully enforce an agreement, we find them delineated enough to support appellants' claim of detrimental reliance.
 
 III. Conclusion
 
 36
 For the foregoing reasons, we reverse the decision of the magistrate and hold that as a matter of law appellants can recover damages sustained in reasonable detrimental reliance on an unfulfilled promise of future at-will employment. We, therefore, remand this case to the magistrate to determine whether such a promise actually was made to appellants and, if so, whether they can establish sufficiently definite harm based on their reliance to be awarded damages.
 
 
 
 [1]
 The court stated:
 "The law in this state has been well stated that an indefinite hiring at so much per day, or per month, or per year, is a hiring at will, and may be terminated by either party at any time, and no action can be sustained in such case for wrongful discharge."
 
 
 [344]
 S.W.2d at 643 (citations omitted and emphasis added)
 
 
 [2]
 The court stated:
 If plaintiff has a cause of action under the facts here, it must be rooted in defendant's breach of contract. It is plaintiff's position that defendant's promise of employment, which plaintiff relied upon and acted upon to his detriment, reanimated an unenforceable agreement, because such promise created an estoppel to deny the contract. * * * To allow recovery of damages for breach of an oral contract of employment for an indeterminate period, either before or after entry thereupon, would be to overrule a long line of decisions which hold exactly the opposite.
 
 
 [344]
 S.W.2d at 644 (emphasis added)
 
 
 [3]
 The court said:
 In such a situation, there is no mutuality of obligation. The employee may quit any time or never start performance and suffer no liability. If the employer is held liable, the amount and extent of damages poses a difficult question. If the employee is fired one week after he starts work, clearly under Missouri law, he can recover nothing.
 
 
 [344]
 S.W.2d at 644
 
 
 [4]
 The case of Mayer v. King Cola Mid Am., Inc., 660 S.W.2d 746 (Mo.Ct.App.1983) lends no support to AT & T. First, Mayer involved a situation in which the employee has already been hired. Second, the court's statement "the employer [in the Morsinkhoff case] incurred no liability for not allowing the employee to start," id. at 750, is merely an incomplete summary of the Morsinkhoff result discussed supra