[No. 20456–4–I.   Division One.   June 25, 1990.]

AMERICAN AIR FILTER CO., ET AL, *Appellants*, v.
WASHINGTON PUBLIC POWER SUPPLY SYSTEM,
ET AL, *Respondents*.

*Herman S. Siqueland,* for appellants.

*Stanley J. Bensussen,* for respondent WPPSS.

*Susan M. Hammer,* for respondent Pacific Power and Light Co.

COLEMAN, C.J.—American Air Filter Company (AAF) appeals an order granting summary judgment in favor of Washington Public Power Supply System (WPPSS), arguing that the debt owed AAF by WPPSS could be paid from WPPSS' general fund, rather than from a special construction fund. AAF also argues that it should have been awarded prejudgment interest from the date it signed the contract modification, rather than from the later date on which WPPSS signed the modification. We disagree.

WPPSS is a joint operating agency and municipal corporation formed pursuant to RCW 43.52.360 to acquire, construct, operate, and own plants, systems, and other facilities for the generation and/or transmission of electric energy and power. *Chemical Bank v. WPPSS,* 102 Wn.2d 874, 880–81, 691 P.2d 524, *cert. denied,* 471 U.S. 1065 (1984). WPPSS started construction of Washington nuclear

plants (WNP) 1, 2, and 3 in the early 1970's. *Chemical,* at 881. In 1974 WPPSS decided to construct WNP 4 and 5.

In February 1977 WPPSS adopted resolution 890 to provide financing and facilitate construction of WNP 4 and 5. *WPPSS v. Pittsburgh–Des Moines Corp.,* 876 F.2d 690, 697 (9th Cir. 1989) (*PDM*). To raise capital for the two plants, resolution 890 provided for the creation and issuance of revenue bonds. *PDM,* at 697. The resolution also created various special funds, including a construction fund, revenue fund, and bond fund, from which WPPSS was to pay the plants' obligations. *PDM,* at 698. Section 6.9 of the resolution provided that the costs of construction of WNP 4 and 5 were to be paid with money in the construction fund. Under subsection J of section 6.9, the cost of decommissioning a project that was terminated before completion of construction was to be included as a cost of construction.

In July 1978 AAF and WPPSS contracted for AAF to design, deliver, and install HVAC packaged air handling units for WNP 3 and 5. Included in the contract was a "convenience termination" clause by which WPPSS could terminate the contract without breaching it. Under the clause, however, WPPSS would be liable to AAF for costs incurred as a result of the premature termination of the contract.

In June 1982 WPPSS exercised its convenience termination rights in regard to WNP 5. AAF's work on WNP 3 was not affected by the termination of WNP 5. After lengthy negotiations, the parties agreed on February 8, 1984, that WPPSS owed AAF $833,000 for its work on WNP 5. The agreement was memorialized in a letter of agreement in principle prepared by WPPSS and signed by AAF on February 13, 1984. A formal contract modification, Change Order 9, was signed by AAF on March 21, 1984, and was signed by WPPSS on April 30, 1984.

On August 15, 1984, after WPPSS had failed to pay the agreed amount, AAF filed this action to recover its debt.

AAF claimed that it was entitled to $833,000 plus prejudgment interest from February 8, 1984, the date that the parties agreed to the amount owed. On June 11, 1986, a trial judge granted partial summary judgment to AAF, holding that WPPSS owed AAF $833,000 plus prejudgment interest from a date to be determined at trial. Also to be determined at trial was whether WPPSS' obligation to AAF was a general obligation or one payable only from the special construction fund created by resolution 890. On September 29, 1986, another trial judge granted summary judgment to WPPSS, holding that AAF was entitled to prejudgment interest on the principal sum of $833,000 at 12 percent per annum from April 30, 1984, the date on which WPPSS signed the change order. The court also held that AAF's judgment was payable only from the WNP 4/5 construction fund or any other WNP 4/5 special fund that was chargeable with paying obligations from the WNP 4/5 construction fund, pursuant to resolution 890. The court's decision was based upon a finding that *PUD 1 v. WPPSS,* 104 Wn.2d 353, 705 P.2d 1195, 713 P.2d 1109 (1985), governed the questions of law at issue. This appeal followed. On June 29, 1987, appellant filed a Chapter 11 petition in bankruptcy court and thus the appeal was stayed until counsel for appellant learned on April 14, 1988, that he had been authorized by the bankruptcy court to proceed with the action.

We first consider whether the trial court erred when it held that AAF's judgment was not a general obligation and thus was payable only from the WNP 4/5 special construction fund or any other WNP 4/5 special fund chargeable with paying obligations from the WNP 4/5 construction fund.

WPPSS is a joint operating agency formed pursuant to RCW 43.52.360. Such agencies are formed to acquire, construct, operate, and own plants, systems, and other facilities to generate electric energy and power. RCW 43.52.360. The agencies have most of the powers granted to public utility districts. RCW 43.52.360; RCW 43.52.391. Joint

operating agencies, however, may not levy taxes or issue general obligation bonds. RCW 43.52.391. They are authorized to issue revenue bonds or warrants payable from the revenues of the utility properties they operate. RCW 43.52-.3411. Joint operating agencies also may create special funds for various purposes, including the payment of revenue bonds or the construction of a utility. RCW 43.52.3411; RCW 43.52.375; RCW 54.24.018(3); RCW 54.24.030(1); RCW 54.24.040; RCW 54.24.050.

■ Once a special fund is created, it generally may not be used for any other purpose and the claims payable out of a special fund usually are not payable from any other fund. *PDM*, at 699; *PUD*, at 367, 368; 15 E. McQuillin, *Municipal Corporations* § 39.45 (3d rev. ed. 1985). To determine if this special fund doctrine applies in this case, four questions must be answered affirmatively: (1) Did the joint operating agency have the power to create a special fund? (2) Did it create the special fund? (3) Did the revenues pledged to the fund exclude revenues from other projects? and (4) Did the joint operating agency assign the money to create a lien? *See PDM*, at 700. In *WPPSS v. Pittsburgh–Des Moines Corp., supra,* a case directly on point with ours, the court answered all four questions affirmatively and held that PDM's judgment against WPPSS was payable only from the special construction fund.

PDM entered a contract with WPPSS to design, furnish, and install fuel pool liners at WNP 3 and 5. When WNP 4 and 5 were terminated, WPPSS and PDM executed a modification to the original contract to settle all claims arising out of the contract modification. Under the modification, the parties agreed that WPPSS owed PDM $366,897. WPPSS later initiated breach of contract and warranty actions against PDM, and PDM counterclaimed for the debt owing under the contract modification. Summary judgment was granted in favor of PDM on the amount owing under the contract modification, with no limit on the funds from which the judgment could be collected. On appeal, the Ninth Circuit held that the judgment was

payable only from the construction fund created under resolution 890. *WPPSS v. Pittsburgh–Des Moines Corp.,* 876 F.2d 690, 702 (9th Cir. 1989).

Similarly, this court finds that AAF's judgment is payable from only the construction fund. The statutes, resolutions, and cases applied in *PDM* all are controlling in this case and result in each of the four questions above to be answered in the affirmative.

First, as in *PDM,* WPPSS had the power to create a special fund to pay for the cost of construction of WNP 4 and 5. *See* RCW 43.52.3411; RCW 54.24.030; *PDM,* at 700; *PUD,* at 367. Second, it is clear from section 6.8 of resolution 890 that the parties created a special fund.

> SECTION 6.8. *Construction Fund; Application of Proceeds of Sale of Bonds.* There is hereby created a special fund of the System to be known as the "Projects Construction Fund" (hereinafter referred to as the "Construction Fund"), which shall be held in trust by the System.

Section 6.9 states that payment of the cost of construction was to be made from the construction fund. Together, sections 6.8 and 6.9 demonstrate that the parties intended to limit the funds pledged to pay the costs of construction to the construction fund. *PDM,* at 700.

Third, section 6.8 of resolution 890 demonstrates that the revenues pledged to the construction fund excluded revenues from other projects. *PDM,* at 700. Finally, under RCW 54.24.040, pledges of revenues by a joint operating agency to a special fund create valid and binding liens as soon as the pledges are made, with no further action required. *PDM,* at 700.

■ Appellant's argument that neither the contract nor the contract modification designated that payment would be made from a special fund and, therefore, that a general obligation was created, is unpersuasive. As noted in *PDM,* resolutions of municipal corporations are similar to legislative acts. *PDM,* at 700. One who deals with the corporation has notice of and is bound by its resolutions. *PDM,* at 700, 701; *see also State ex rel. Bain v. Clallam Cy. Bd. of Cy.*

*Comm'rs,* 77 Wn.2d 542, 549, 463 P.2d 617 (1970). The special fund was created a year before the original contract and several years before the contract modification was executed. The contract modification, therefore, had no bearing upon the creation and assignment of the special fund. *See PDM,* at 701.

Similarly, appellant's argument that WPPSS' obligation to AAF was unconditional and therefore was payable from any of WPPSS' funds is inapposite. Under resolution 890, costs of construction, including the cost of decommissioning a project, were to be paid from the special construction fund. Under the special fund doctrine, claims payable out of a special fund usually are not payable out of any other fund. *PDM,* at 699; *PUD,* at 367, 368. Considering the restrictions created by resolution 890, the acknowledgment that WPPSS' obligation to AAF was unconditional referred only to the amount owed, rather than to the source of payment of the obligation.

In light of our disposition, it is not necessary to address appellant's argument that the trial court erred when it held that WPPSS did not have the authority to incur general obligations. Even if the Legislature intended to authorize WPPSS to incur general obligations, it is apparent that WPPSS created the special construction fund to pay the costs of construction of WNP 5, including the costs of decommissioning the project. *See PDM,* at 700. Payment of such costs, therefore, was limited to payment from the construction fund. *See WPPSS v. Pittsburgh–Des Moines Corp., supra.*

We next consider whether the trial court erred when it held that AAF was entitled to prejudgment interest from the date that WPPSS signed the contract modification, rather than the earlier date on which AAF signed the modification.

Prejudgment interest is allowable when an amount claimed is liquidated. *Prier v. Refrigeration Eng'g Co.,* 74 Wn.2d 25, 32, 442 P.2d 621 (1968). A claim is liquidated

when it is possible to compute the amount with exactness, without reliance upon opinion or discretion. *Prier,* at 32.

Appellant argues that the amount of its claim was liquidated at the time that the parties signed the letter of agreement in principle. Alternatively, appellant argues that interest could be awarded from the time that it signed the contract modification that had been prepared by WPPSS.

■ Although the letter of agreement in principle set forth the same amount ($833,000) as was finally agreed to in the contract modification, WPPSS had no duty to pay that amount until the contract was executed. It had no duty to pay then because the original contract stated that modifications to the contract had to be in writing. The contract modification, therefore, was not binding until both parties had agreed to the change in writing. WPPSS did not sign the change order until April 30, 1984. Consequently, prejudgment interest was properly awarded from April 30, 1984, the date on which WPPSS signed the contract modification.

The order granting summary judgment is affirmed.

SWANSON and WINSOR, JJ., concur.