[No. 28615-3-I.   Division One.   March 1, 1993.]

BETHEL KOHN, *Respondent*, v. GEORGIA-PACIFIC CORPORATION, *Appellant.*

712

*Jeffrey A. Hollingsworth, Rex D. Berry,* and *Perkins Coie,* for appellant.

*Deborra E. Garrett* and *Raas, Johnsen, Garrett & Stuen, P.S.,* for respondent.

KENNEDY, J. — Georgia-Pacific Corporation (Georgia-Pacific) appeals the trial court's failure to grant its motion for summary judgment, its motion for dismissal after opening statement and its motion for directed verdict in this breach of employment contract case. Georgia-Pacific also assigns error to several evidentiary rulings and jury instructions. Bethel Kohn cross-appeals the trial court's dismissal on summary judgment of her causes of action for handicap and age discrimination and the trial court's failure to award prejudgment interest on the judgment amount. Finding that there was sufficient evidence for a factfinder to conclude that Georgia-Pacific violated its employment contract with Kohn and that the trial court's evidentiary rulings and jury instructions were correct, we affirm the judgment in the breach of employment contract case. We also affirm the trial court's denial of prejudgment interest. Because Kohn presented insufficient evidence of age and handicap discrimination to defeat summary judgment, we

also affirm the trial court's summary dismissal of those claims.

## FACTS

Bethel Kohn was employed by Georgia-Pacific in its Bellingham office beginning on December 16, 1968. During her tenure with the company, Kohn worked in a number of administrative clerical positions.

In 1986, in anticipation of taking a medical leave of absence, Kohn requested, received and reviewed a copy of Georgia-Pacific's operating policies manual. The operating policies manual specifically addressed medical leave. The policy stated:

> When a leave is taken in accordance with these conditions and the employee furnishes the company with a licensed physician's statement that the employee is medically able to return to work as of a stated date, the company will, within a reasonable time period, reinstate the employee in the same job if it still exists and is available, or an available job of like status and pay for which the employee is qualified without loss of continuous service credit. Although it is the company's policy to return such employees to some job following nonoccupational disability leaves, there may be times when, in management's sole discretion, the employee's old job or indeed any suitable reemployment might not be available.

The operating policies manual also addressed other issues of employment. The manual specifically stated that when a job is eliminated, the employee will be notified of and allowed to apply for positions which may become available for a period of 1 year after the elimination of the position. This manual also states that employment is "at will" but divides termination procedures into separate categories based on terminations for cause and terminations that are the result of elimination of positions.

On April 8, 1986, Kohn submitted an application for a medical leave of absence to begin on May 1, 1986. The back of the application contained the following statement:

> When a leave is taken in accordance with these conditions and the employee furnishes the company with a licensed physician's statement that the employee is medically able to return to work as of a stated date, the company will, within a reason-

able time period, reinstate the employee in the same job if it still exists and is available, or an available job of like status and pay for which the employee is qualified without loss of continuous service credit.[1]

Kohn fulfilled all requirements as stated in the medical leave claim form and was granted the medical leave. The leave of absence was originally scheduled to run from May 1, 1986, through July 7, 1986. The leave was extended to September 30, 1986, by which time Kohn had fulfilled all of the requirements to be reinstated.

In early May 1986, while Kohn was on medical leave, Georgia-Pacific eliminated her position. Because her position had been eliminated, Georgia-Pacific purportedly applied the job elimination procedures in its operating policies manual to Kohn, even though she had been on medical leave at the time of the elimination.

Between September 30, 1986, and May 7, 1987, Georgia-Pacific advised Kohn of four job openings, including two positions as a maintenance clerk and two administrative secretarial positions. Notice of these positions was also given to other Georgia-Pacific employees, and ultimately Kohn, other employees, and persons outside of the company were interviewed for these jobs.[2] Kohn was not selected for any of these jobs. Georgia-Pacific formally terminated Kohn's employment on May 1, 1987.

Between May 1, 1987, and February 1990, 18 additional clerical positions became available at Georgia-Pacific. Kohn was neither notified of nor considered for any of these positions.

---

[1]The form also stated that "[r]eplacements for employees granted disability leaves will be considered as temporary, subject to termination or transfer upon the disabled employee's return."

[2]Although at trial one of the interviewers testified that Kohn was unqualified for one of these four positions, in cross examination he recounted that, in his previous deposition, he had admitted that she was qualified for the position but was not the most qualified.

Kohn filed the instant lawsuit on August 4, 1987, alleging breach of contract, handicap discrimination, age discrimination and wrongful discharge. All except the breach of contract claim were dismissed on summary judgment. The case proceeded to trial on the breach of contract claim. The trial court denied Georgia-Pacific's motions in limine to exclude evidence of available clerical positions that came open after May 1, 1987, and to exclude evidence of damages. The trial court also denied Georgia-Pacific's motion to dismiss after Kohn's opening statement and its motion for a directed verdict.

The jury found for Kohn on the breach of contract claim and awarded her $41,588.33 for past damages and $130,000 for future damages. The trial court also awarded Kohn $327 in costs and $29,000 in attorney fees. Postjudgment interest was awarded at the rate of 12 percent. Prejudgment interest was denied.

DISCUSSION

I

Breach of Contract Claim

Georgia-Pacific appeals the trial court's failure to dismiss Kohn's claim for breach of contract on summary judgment, after her opening statement and by way of a directed verdict. Georgia-Pacific also claims that there was not substantial evidence to support the jury's verdict.

■■ In determining whether an order of summary judgment is correct, this court is to engage in the same inquiry as the trial court. *Rhea v. Grandview Sch. Dist. J.T. 116-200*, 39 Wn. App. 557, 559, 694 P.2d 666 (1985). A motion for summary judgment should be granted if there is no genuine issue of material fact or if reasonable minds could reach only one conclusion on that issue based upon the evidence construed in the light most favorable to the nonmoving party. *Sea-Pac Co. v. United Food & Comm'l Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

■ Similarly, a trial court may properly dismiss a complaint after an opening statement if the plaintiff has conclusively demonstrated that she cannot prevail. *See Hallum v. Mullins*, 16 Wn. App. 511, 557 P.2d 864 (1976). "[T]rial courts are unquestionably empowered to dispose of civil actions on the opening statement of counsel for a party." *Hallum*, 16 Wn. App. at 515. The purpose of such a procedure is to "prevent the unnecessary expenditure of time and money to both litigants and court". *Scott v. Rainbow Ambulance Serv., Inc.*, 75 Wn.2d 494, 496, 452 P.2d 220 (1969).

However, the dismissal of a case at this juncture is considered a drastic action and it is

> *only* when such statement shows affirmatively that there is no cause of action, or that there is a full and complete defense thereto, or when it is expressly admitted that the facts stated are the only facts which the party expects or intends to prove, that the court is warranted in acting upon it.

*Hallum*, at 516 (quoting *Redding v. Puget Sound Iron & Steel Works*, 36 Wash. 642, 644-45, 79 P. 308 (1905)).

■ An appeal from the denial of a motion to dismiss an action prior to the taking of testimony "will be treated in the same manner as an appeal from an order granting summary judgment." *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 269, 510 P.2d 233, 59 A.L.R.3d 1209 (1973).

■ Likewise, a motion for a directed verdict is reviewed under the same standard as applied by the trial court, that is, the motion is to be granted only when, in construing the evidence in a light most favorable to the nonmoving party, it can be held as a matter of law that there is no evidence, nor a reasonable inference therefrom, to sustain a verdict in favor of that party. *Peterson v. Littlejohn*, 56 Wn. App. 1, 781 P.2d 1329 (1989).

Thus, in reviewing Georgia-Pacific's claims of error on Kohn's breach of contract claim, we will uphold the trial court's decisions denying these motions unless, when considering the evidence construed in the light most favorable

to Kohn, there was no cause of action for breach of contract as a matter of law.

Georgia-Pacific argued below, and now claims on appeal, that there can be no cause of action for breach of contract here because there was no contract between the parties which was breached. Georgia-Pacific contends that Kohn was, as a matter of law, an "at-will" employee, liable to dismissal for any reason or for no reason, at any time.

Georgia-Pacific relies primarily upon the cases of *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 762 P.2d 1143 (1988) and *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 815 P.2d 1362 (1991), for its position that this court should vacate the jury verdict and remand for summary dismissal of Kohn's breach of contract claim. In *Stewart*, the Supreme Court determined as a matter of law that the trial court had erroneously concluded that a layoff provision in an employee handbook rose to the level of a promise of specific treatment in a specific situation. Moreover, there was no evidence in *Stewart* that the employee had relied upon the layoff provision.[3] *Stewart*, 111 Wn.2d at 613-14. Accordingly, a $380,000

---

[3]If a provision in a handbook does rise to the level of a promise in a specific situation, and that is relied upon, an enforceable contract can be created. As stated in *Stewart*,

> [t]he court reasoned that established personnel policies may, in certain circumstances, create legitimate employee expectations that the policies will be binding.
>
> It would appear that employers expect, if not demand, that their employees abide by the policies expressed in [employee] manuals. This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. Once an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory.

*Thompson*, at 230. Therefore, the court held:

> [I]f an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. We believe that by his or her unilateral objective manifestation of intent, the employer creates an expectation, and thus an obligation of treatment in accord with those written promises.

*Stewart*, 111 Wn.2d at 612 (quoting *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 230, 685 P.2d 1081 (1984)).

jury verdict for damages was set aside and the trial court's judgment was reversed.

In *Gaglidari*, the Supreme Court concluded as a matter of law that an employee handbook gave rise to a contract, the terms of which were modified by a subsequent handbook. *Gaglidari*, 117 Wn.2d at 431-32. Accordingly, the employee was not employed at will. The case was remanded for trial on the factual issue of whether there had been grounds for immediate dismissal for cause, the record being insufficient in that regard.

■ *Stewart* and *Gaglidari* would appear, at first blush, to stand for the proposition that the interpretation of an employee handbook is a question of law for the courts. *See Stewart*, at 613; *Gaglidari*, at 432.[4] However, after the instant matter was briefed for this appeal, the Supreme Court handed down *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 826 P.2d 664 (1992). In *Swanson*, six members of the court determined that *Stewart* and *Gaglidari* stand only for the proposition that, in those particular cases, reasonable minds could not differ as to whether the language at issue constituted a promise of specific treatment in specific circumstances. *Swanson*, 118 Wn.2d at 521-22.[5]

> [N]either *Gaglidari* nor *Stewart* should be read as saying that in every instance the question whether a handbook constitutes a contract . . . , or an enforceable promise of specific treatment in specific circumstances, is a question of law for the courts.
>
> We note that some courts have concluded that whether a handbook constitutes a contract is a matter of law for the courts.
>
> The more modern view — and the view in keeping with the modern analysis of other types of contracts — is that the

---

[4] *See also St. Yves v. Mid State Bank*, 111 Wn.2d 374, 757 P.2d 1384 (1988) (written contract for at-will employment unambiguous; lower appellate court erred in determining that personnel policy manual raised issue of fact as to whether manual created independent basis for wrongful discharge claim), *overruled on other grounds in Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990).

[5] In *Swanson*, 118 Wn.2d at 528, the Supreme Court also noted that *St. Yves* must now be read in light of *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990) ("Thus, to the extent *St. Yves* depends upon the 'plain meaning rule', . . . its reasoning was rejected in *Berg*.").

question whether employee handbook provisions are part of the contract is a question of fact. That is, the analysis is the same as that generally used to determine whether a contract has been formed: Would a reasonable person looking at the objective manifestations of the parties' intent find that they had intended this obligation to be part of the contract?

(Citations omitted.) *Swanson*, 118 Wn.2d at 522-23 (quoting 1 L. Larson, *Unjust Dismissal* § 8.02, at 8-5 (1988)).

In the instant appeal there are at least two separate written policies with respect to reinstatement of an employee after completion of her medical leave from which a factfinder could determine that Georgia-Pacific breached an employment contract to rehire Kohn to fill any suitable job which came open at the company. The back of the medical leave application slip indicated that if an employee meets the conditions of medical leave,

the company will, within a reasonable time period, reinstate the employee in the same job if it still exists and is available, or an available job of like status and pay for which the employee is qualified without loss of continuous service credit.

The operating policies manual states virtually the same thing with the addition of language indicating that there may not be a suitable job, in management's "sole discretion". The operating policies manual does state that employment is "at will" but this is merely one phrase among many statements purporting to govern employment termination and job elimination.

A factfinder could determine that these provisions for specific treatment governing reinstatement after a medical leave constituted an enforceable employment contract to rehire Kohn to any suitable employment which became available after termination of her position in spite of the "at-will" language.

Moreover, it is a disputed fact whether the policy manual allowed Georgia-Pacific to retain discretion in all aspects of reinstatement. Even ignoring that the reinstatement policy set out on the medical leave slip signed by Kohn made no mention of company discretion at all, a factfinder interpreting the reinstatement policy set out in the operating policies

manual could determine that Georgia-Pacific only had discretion *in determining whether suitable jobs were available* for a person returning from medical leave. Here, it is undisputed that suitable jobs were available.

The policy language specifically states that "there may be times when, in management's sole discretion, the employer's old job or indeed any suitable reemployment might not be available." This does not necessarily grant the employer sole discretion in rehiring. It may merely grant the company discretion in deciding whether suitable jobs in the company exist for the returning employee. In that case, the policy language would give Kohn, who was on medical leave when her position was eliminated, priority in company hiring for certain positions for which she was qualified.

■ Although the general position elimination policy, which only requires Georgia-Pacific to *notify* a party of possible positions for a period of 1 year, also may have created an enforceable promise between the parties, the promise of special employment consideration for those employees on medical leave was more specific and would, therefore, govern the specific situation in the instant case. *See Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 230, 685 P.2d 1081 (1984).

The record clearly indicates that Georgia-Pacific informed plaintiff of four jobs for which she was "qualified". Thus, there was substantial evidence that, in Georgia-Pacific's sole discretion, "suitable" reemployment existed for the respondent.[6] Given the existence of such "suitable" reemployment and given that there was evidence of an enforceable promise to place Kohn into such suitable reemployment, there were questions of material fact as to whether the failure to place Kohn in one of these positions after her position was eliminated while she was on medical leave breached a contract between Georgia-Pacific and Kohn.

---

[6]There was also substantial evidence of Kohn's reliance on these policies. Kohn requested the operating policies manual before she applied for her medical leave, and she signed the form which contained language regarding reinstatement from her medical leave. At trial, her testimony indicated that she relied on both policies.

Georgia-Pacific argues, in the alternative, that, even if it breached an enforceable promise to rehire Kohn, there can still be no recovery for breach of contract, as a matter of law, because she could have been terminated at any time after being rehired as an "at-will" employee. We disagree.

█ The record indicates that there were questions of material fact as to whether an enforceable employment promise had been created which prohibited Kohn from being subject to at-will termination. Although Georgia-Pacific's operating policies manual indicated that Kohn was an "at-will" employee, it also indicated that only by the violation of specific rules would an employee be immediately discharged. Because of this qualifying language, under *Thompson* and *Swanson*, the finder of fact could determine that Georgia-Pacific could not simply dismiss Kohn "at will" upon reinstatement unless she violated a specific rule or unless her position were terminated. *Swanson*, 118 Wn.2d at 519.

Georgia-Pacific gained the benefit of the appearance of fairness in its employee relations by creating specific termination and rehiring policies which it claimed that it would follow. Therefore, it cannot now claim as a matter of law that a boilerplate "at-will" phrase wipes away an employee's reasonable reliance on the other policies established. Although Georgia-Pacific may in the future change its policies so as to be able to dismiss an employee at any time, at the present time, it cannot claim as a matter of law that Kohn could be terminated at any time for any reason.[7]

We do not mean to indicate by this conclusion that an employer cannot ever have procedural policies without creating enforceable promises, but we do caution that when an

---

[7]Even assuming that Georgia-Pacific retained the right to dismiss Kohn when she was rehired, there was no evidence presented in Georgia-Pacific's motion for summary judgment or at trial that Georgia-Pacific would not follow its specific procedural policies with respect to terminating an employee. The Operating Policies Manual indicates that even an "at-will" employee is only terminated for cause or if a job is eliminated. Here, the evidence did not indicate that, had Kohn been rehired, either of these things would occur. Thus, even assuming that employment after being rehired was "at will", a factfinder could find that Georgia-Pacific would not simply have dismissed Kohn, for example, in 1 hour, had she been rehired.

employer intends to create mere procedural policies, they must be clearly designated and *treated* as such. A company cannot use them to obfuscate "at-will" employment status without running the risk that enforceable promises will be created. *Swanson,* 118 Wn.2d at 519.

The trial court correctly denied Georgia-Pacific's motions to dismiss the breach of contract claim on summary judgment, after opening statement, and in a directed verdict. Based on the foregoing discussion, it is also clear that the evidence was sufficient to allow the jury to find that a contract was created between the parties and that the contract had been breached by Georgia-Pacific.[8]

## II
## Evidentiary Questions

Georgia-Pacific also claims that reversal is required because of prejudicial errors in the admission of evidence. We briefly address these contentions which we find to be without merit.

### A. Evidence of Job Positions Open After May 1, 1987.

Georgia-Pacific contends that the trial court erred in failing to grant its motion in limine to exclude evidence of job openings subsequent to May 1, 1987. Georgia-Pacific contends that such evidence is irrelevant and prejudicial because under the terms of its operating policies manual, it only had to provide job information for 1 year after a position was terminated.

The decision of a trial court to grant or deny a motion to exclude evidence is reviewed under an abuse of discretion standard. *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 91, 549 P.2d 483 (1976). The trial court did not abuse this discretion in the present case.

Although Georgia-Pacific is correct that the operating policies manual provides that the company shall inform termi-

---

[8]We need not address Kohn's alternative claim for reinstatement since we affirm the damages remedy awarded by the trial court.

nated employees whose jobs have been eliminated of positions for a year after they are terminated, the more specific provision governing reinstatement of employees on medical leave indicates that the company will offer a position to the employee if one is available "within a reasonable time period". It was up to the jury to consider whether job openings occurring after May 1, 1987, occurred "within a reasonable time period". Furthermore, evidence of continued job openings was relevant to the question of whether jobs were still available after appellant should have been reinstated, which goes to the question of how long her reinstated employment would have lasted. Therefore, the trial court properly denied the motion.

B. <u>Motion To Preclude Evidence of Damages.</u>

The trial court correctly denied appellant's motion to preclude the admission of evidence of damages. As noted above, even though Georgia-Pacific contends that Kohn was an "at-will" employee, an examination of its operating policies manual reveals that there was an issue of disputed fact as to whether she could simply be fired the "next hour" after reinstatement without some specific cause. There is evidence that she would only be terminated for cause or if her new position were to be eliminated.

In *Bower v. AT&T Technologies, Inc.*, 852 F.2d 361 (8th Cir. 1988), a case cited by appellant for the proposition that a person cannot receive damages for breach of contract if he or she is an at-will employee, the Eighth Circuit specifically recognized that, under Missouri law, damages for breach of an oral promise of future at-will employment can be enforced where there has been reasonable detrimental reliance on such promise. *Bower*, 852 F.2d at 363. The measure of damages in *Bower* was such loss as a promisee may be able to prove arose from such detrimental reliance, since if the promise had been kept, there would have been no job security. *Bower*, 852 F.2d at 365-66. Here, in contrast, there is evidence from which the trier of fact could determine that, upon reinstatement, Kohn would have been more than an at-will employee. *Bower* is thus inapposite.

The jury heard evidence of Georgia-Pacific's prospects for its Bellingham office and noted its job openings and the continuation in those jobs of people who had been hired in jobs for which Kohn was qualified. Kohn's "speculative" belief that she would have remained at Georgia-Pacific until retirement is thus not the only evidence relating to the tenure of a new position. Therefore, the amount of past and future damages was a question of fact for the jury, and evidence of damages was relevant to this determination. The trial court did not err.

C. Admission of Whatcom County Wage Survey.

Georgia-Pacific next challenges the trial court's admission into evidence of exhibit 7, a chart of Whatcom County wages for secretarial positions prepared by the State. The trial court admitted the chart under ER 803(a)(17), which allows the admission of evidence that would otherwise be hearsay if it is one of the following: "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations." Dr. Nelson, an expert witness at trial, used the data to calculate Kohn's wage loss. Therefore, the wage survey meets the criteria for a published tabulation used by persons in particular occupations.

Without explanation, Georgia-Pacific also contends that, at most, the survey was a pamphlet relied upon by the witness which can only be read into evidence and not submitted as an exhibit. We disagree. ER 803(a)(17) does not prohibit admission of such evidence in exhibit form. The information in the wage survey would be difficult to present to the jury in the form of oral testimony. The exhibit was relevant to the jury's weighing of the expert opinion evidence. Therefore, its admittance as an exhibit was not an abuse of the trial court's discretion.

III

Jury Instructions

Georgia-Pacific also challenges the trial court's giving of instructions 9 and 14. Jury instructions are proper if they

permit each side to argue its theory of the case, are not misleading and, when read as a whole, properly inform the jury of the applicable law. *Tiderman v. Fleetwood Homes*, 102 Wn.2d 334, 337-38, 684 P.2d 1302 (1984). Georgia-Pacific objects to that part of instruction 9 which indicates that, before the jury can find for the plaintiff, it must find that the defendant breached its specific policy by "refusing to reemploy plaintiff within a reasonable time after the end of her leave of absence."

Georgia-Pacific is correct that this instruction specifies the specific version of any contract which was created between the employer and Kohn. However, a reading of all of the instructions together indicates that this instruction was proper. First, once a jury has determined the terms of a contract, the legal effect of those terms is a question of law. *Swanson*, 118 Wn.2d at 521. Thus, it was proper for the court to specify what the contract terms required if a contract was found by the jury.

Moreover, instruction 9 indicated the only situation in which the jury could find for Kohn. No other breach of promise would allow a recovery by Kohn. Georgia-Pacific all but admitted that if a contract was created requiring it to rehire Kohn, it breached the contract. Georgia-Pacific contended that Kohn was an "at-will" employee and that her reinstatement was subject to its sole discretion. If the jury believed that, then it could not have found that a specific contract was created which was breached by Georgia-Pacific. The jury simply had to decide if the promise specified in instruction 9 existed and was breached. Instruction 9 was proper.[9]

As for instruction 14, Georgia-Pacific objects to the trial court's allowance of the addition of lost future wages to the damage award. However, as noted above, future damages are not precluded as a matter of law, and this was a

---

[9]Kohn contends that Georgia-Pacific failed to properly object to the instruction at trial. Georgia-Pacific specifically objected to the instruction, arguing that it was for the jury to decide the scope of the contract. The objection was thus preserved for purposes of appeal.

factual question for the jury. Appellant contends that the instruction does not require the requisite specificity, and thus does not meet the actual legal test for lost future wages. The case cited by the appellant, *Hayes v. Trulock*, 51 Wn. App. 795, 755 P.2d 830, *review denied*, 111 Wn.2d 1015 (1988), merely indicates that it is the employee's burden to prove lost future wages for a reasonably certain period of time.

Instruction 14 correctly states that the jury should award earnings "with reasonable probability to be lost in the future", and also states that the burden of proving the damages rests with the plaintiff. Therefore, instruction 14 was proper.

## IV
## Cross Appeal

Kohn cross-appeals the dismissal on summary judgment of her wrongful discharge claim based on age and handicap discrimination. In *Jones v. Kitsap Cy. Sanitary Landfill, Inc.*, 60 Wn. App. 369, 803 P.2d 841 (1991), this court stated that, once a plaintiff has made out a prima facie case of discrimination and the employer has met its burden of articulating a nondiscriminatory reason for a termination, to avoid summary judgment, the plaintiff must then *produce evidence* that the articulated nondiscriminatory reason is mere pretext. *Jones*, at 371 (citing *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 753 P.2d 517 (1988)).

In the present case, Kohn contends that Georgia-Pacific did not articulate a nondiscriminatory reason for termination of her employment. In its motion for summary judgment, Georgia-Pacific cited the elimination of appellant's position as the reason for her dismissal. Kohn never demonstrated that this was mere pretext. She merely argued that this articulated reason was insufficient to shift the burden of proof. We disagree. Elimination of a position is, on its face, a nondiscriminatory reason for a discharge. Since Kohn did not produce evidence that this was mere pretext, we must affirm the trial court's grant of summary judgment.

■ Kohn also cross-appeals the trial court's failure to award prejudgment interest. Prejudgment interest is to be awarded on a *liquidated* claim; that is, a claim that is based on evidence that, if believed, is exact enough to make an accurate computation of damages without resort to opinion or discretion. *American Air Filter Co. v. WPPSS*, 58 Wn. App. 313, 319-20, 792 P.2d 1275 (1990).

In the present case, Kohn contends that her award of back pay should be considered liquidated damages because the money she would have received for back pay was a definite amount. We disagree. Unlike a case of wrongful discharge where back pay is computed from the moment of termination at a specific rate, here we have a case where the breach of the employment contract was the company's decision not to reinstate Kohn in any available position for which she was qualified. There was evidence presented of several jobs for which Kohn *may* have been hired. There was disputed evidence as to which of these jobs she was qualified for and when her employment would have begun, had she been hired for any particular position. Although the medical leave reinstatement policy promised reinstatement in the same job if it exists, since Kohn's former job no longer existed, the promise was for a job of like status and pay for which Kohn was qualified. Because that particular position and its starting date was not identified, however, opinion or discretion had to be exercised in computing back pay. The trial court correctly denied an award of prejudgment interest.

## V
### Attorney Fees

■ Kohn requests attorney fees on appeal. For successfully defending her contract claim judgment, Kohn is entitled to an award of attorney fees on appeal. She is not so entitled to attorney fees incurred on the cross appeal issues. RCW 49.48.030; *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 433, 815 P.2d 1362 (1991). Kohn is directed to

timely file an affidavit of attorney fees with the commissioners of this court for a determination of the amount of her award.

PEKELIS, A.C.J., and FORREST, J., concur.

Review denied at 122 Wn.2d 1010 (1993).