[No. 21392. Department Two. November 27, 1928.]

R. P. DAVIDSON, *Respondent* v. MACKALL-PAINE VENEER COMPANY, *Appellant*.[1]

*Miller, Wilkinson & Miller,* for appellant.
*Crass & Hardin,* for respondent.

FRENCH, J.—The Mackall-Paine Veneer Company, a corporation, owns and operates a veneer plant at Vancouver, Washington. In the fall of 1926, R. P.

[1] Reported in 271 Pac. 879.

Davidson was, and had been for a few years, engaged in the installing and operation of a large veneer plant in Sweden. Mr. Davidson had formerly worked in several plants on the Pacific coast and had been sent to Sweden to install American made machinery and operate the plant for at least a limited period.

In the early fall of 1926 the Mackall-Paine Veneer Company was desirous of employing a superintendent to take charge of the operation of their plant at Vancouver, Washington, and had made a number of inquiries of different people endeavoring to locate some man to suitably fill the position.

Among others of whom inquiry was made, was a Mr. Chase of Tacoma, Washington. Mr. Chase was engaged in the business of selling glue to the various veneer plants up and down the coast. It seems that glue is used in large quantities by these various plants, and from the statements of Mr. Chase it appears that he was very familiar with all of the plants on the Pacific Coast, and did a large amount of business with most of them. Evidently as a result of the inquiry, made by the Mackall-Paine Veneer Company of Mr. Chase, concerning the possibility of securing a suitable superintendent, the following cablegrams and letters were exchanged between appellant and respondent, the first cablegram sent to respondent on August 26, 1926, reading:

"Chase suggests you for superintendent our plant. Cable if interested how soon available. Mackall-Paine Veneer Co."

To which Mr. Davidson replied from Sweden by cable dated August 27, 1926:

"Booked to sail October ninth. Arrive Vancouver about November fifteenth. If satisfactory cable me best proposition yearly basis for real quality production superintendent. R. P. Davidson."

On August 31, the following cablegram was received by Mr. Davidson:

"Six thousand annually. Can you sail sooner. Cable. Mackall-Paine Veneer Co."

On September 2 Mr. Davidson cabled:

"Accept proposition. Arriving near November first. Possible steamers crowded to change date. Writing. Davidson."

and on September 4 Mr. Davidson wrote to the veneer company:

"Your several cables received and accepted and I am to enter your employ as Supt. of your Veneer and Panel plant at a salary of $6000 year. I also promise to get there near November 1st as possible. . . . Davidson."

On arriving in New York City from Sweden, the respondent was notified by the appellant by wire that the circumstances were changed as to the position, and that a letter of explanation would follow. The letter of explanation that did follow stated that appellant had found it advisable to arrange for a man to come into the appellant company, as general superintendent and assistant manager, and take a financial interest in the company, and that the employment of any additionaal help would have to be left to the new superintendent. Respondent, however, proceeded to the Vancouver plant and held himself in readiness to perform his part of the contract of employment for some weeks, and thereafter accepted employment with a concern at Aberdeen, Washington, at a somewhat less salary. This action was brought to recover on the contract as evidenced by the cablegrams and letters, tried before the court with a jury, and from a judgment granting certain of the relief prayed for, the veneer company has appealed.

After the various letters and telegrams passing be-

tween the parties were introduced in evidence, all of which in so far as they are deemed material are set out above, respondent introduced certain testimony tending to show that it was the custom, in making contracts such as this, that the employment should be for one year, and the case was submitted to the jury on the theory of a trade custom or usage.

The principal complaint of the appellant centers around the latter part of Instruction No. 4, which instruction reads as follows:

"Instruction No. 4.

"It is admitted in this case that a contract was entered into between plaintiff and defendant for the employment of the plaintiff by the defendant at a salary of six thousand dollars a year. It is contended, however, that this was a contract that could be cancelled or determined at the will of either party to it, and the court instructs you that this is the law and that the contract is one that can be determined or cancelled at the will of either party and without any damage accruing against the person who cancels the contract, unless it is established by the evidence in this case that it is an established custom, with the employers and employees in plants like that belonging to the defendant, to consider, and that they customarily do consider, an offer of so much annually as an agreement for the employment of an individual for the term of one year.

"The burden is upon the plaintiff to prove this custom by a preponderance of the evidence."

The law of the case seems to be well settled, that a contract such as this constitutes an employment for an indefinite period and that such a contract may be abandoned by either party at will without incurring any liability therefor. *Reasnor v. Watts, Ritter & Co.*, 73 W. Va. 342, 80 S. E. 839, 51 L. R. A. (N. S.) 629; Woods on Master & Servant (2d ed.), § 134; *Watson v. Gugino*, 204 N. Y. 215, 98 N. E. 18, Ann. Cas. 1913D 218.

In the above citiations numerous authorities are collected and seem to sustain the proposition that the first part of the above instruction is correct.

The appellant contends, however, that there is no evidence in this case to go to the jury on the question of an established usage or custom. Only two witnesses testified for the respondent on this phase of the matter. Mr. Chase, whose qualifications we think are well established, testified:

"Q. From what you have learned do you know the custom existing among the mills on the Pacific Coast such as the Mackall-Paine mill relative to the employment of superintendents, that is, as to the time? A. Yes. Q. What is that custom? A. Why it cannot be said that there is an absolute fixed custom that all the plants follow. The superintendents are certainly generally hired for a long period. Q. For how long? A. Anywhere from one year up to three years, those that I know of. I had better qualify that statement. There are occasions when they hire them for shorter periods for special reasons."

Respondent himself testifying on the same subject, stated:

"Q. Do you know the custom among the mills, such as the Mackall-Paine Company, on the Pacific Coast in making contracts with men who enter their employ; for instance, when a proposition is made of six thousand dollars annually, do you know what the custom is as to the meaning of that as to time? Answer yes or no. A. Yes. Q. What is that custom? A. A year or more. Each man makes his own contract, . . ."

The respondent gave certain other testimony along the same line, none of which was more definite or certain than that just quoted. We think the only fair inference from the testimony of respondent and of the witness Chase is that the time of employment of superintendents is a matter of special contract, and not a matter of usage or custom. There is no testimony

of any kind in the record indicating that, where a superintendent is hired without anything being said as to the time for which he is hired, there is any usage or custom governing the length of his employment. There is nothing to indicate that the hiring of a superintendent is for a definite period of time, or that there is any usage or custom to that effect. On the contrary the testimony affirmatively shows that the hiring of superintendents in plants of this kind is always and altogether a matter of special contract, and that the employment is for varying periods of time, depending on the agreement of the parties. The testimony falls far short of that necessary to prove a usage or custom.

Reversed with instructions to dismiss.

FULLERTON, C. J., ASKREN, PARKER, and MAIN, JJ., concur.