43 P.3d 1223 (2002)
Bobby FORD, Respondent,
v.
TRENDWEST RESORTS, INC., a corporation, Petitioner.
No. 70699-9.
Supreme Court of Washington, En Banc.
Argued September 20, 2001.
Decided April 11, 2002.
*1224 Daniel J. Gunter, Barbara Joan Van Ess, Seattle, Amicus Curiae on Behalf of Washington Defense Trial Lawyers.
Jeffrey Lowell Needle, Maria C. Fox, Seattle, Amicus Curiae on Behalf of Washington Employment Lawyers Assoc.
Cairncross & Hempleman, J. Tate London, J. Thomas Richardson & Rosemary Daszkiewicz, Seattle, for Petitioner.
Kimberly Ann Marsh, Portland, Or., Strong & Konat, Sidney J. Strong, Seattle, for Respondent.
JOHNSON, J.
This case involves a lawsuit for breach of an employment at-will contract. A jury found Trendwest Resorts, Inc. breached its *1225 promise to rehire Bobby Ford as an at-will employee in a specific position. A jury awarded Ford $235,000 in damages based on his anticipated lost earnings. At issue is whether lost earnings are the measure of damages in a breach of an agreement to hire for employment at-will. The Court of Appeals affirmed the jury award, reasoning there was no relevant difference between discriminatory discharge cases, where lost earnings are the measure of damages, and a breach of an employment at-will contract. Trendwest Resorts, Inc. v. Ford, 103 Wash. App. 380, 12 P.3d 613 (2000). We reverse.

FACTS
Ford began working for Trendwest in 1991 as an at-will employee. Trendwest sells vacation time at a network of resorts in North America. On April 30, 1997, the assistant manager of the "Upgrades" department fired Ford after he arrived at work smelling of alcohol for a second time. Shortly thereafter, Ford's wife called several management contacts at Trendwest attempting to help her husband regain his job. The Trendwest sales director asked Ford if he was willing to complete an alcohol counseling program. Ford agreed to participate in the program and signed an employee assistance agreement. In exchange, Trendwest agreed to rehire him as an at-will employee in "a position equal to that which [he] held." Pl.'s Ex. 1. Trendwest changed Ford's employment status from terminated to "approved leave of absence." Def.'s Ex. 30.
After establishing a treatment schedule, Ford called Trendwest to establish a new work schedule. The manager of the "Upgrades" department told Ford he could not return to "Upgrades," but offered Ford a position as a telemarketer in the "Discovery Program," a far less lucrative position than Ford had previously held. Ford declined the telemarketing position and told Trendwest he did not intend to return to work. Trendwest terminated Ford's employment on July 31, 1997.
Ford filed a lawsuit against Trendwest alleging breach of contract, retaliatory discharge, intentional interference with employment, and defamation. The trial court granted partial summary judgment in favor of Trendwest on the intentional interference with employment and defamation claims, and Ford voluntarily dismissed his retaliation claim. A jury trial was held on the breach of contract claim.
The jury was given instruction 15, offered by Ford, which allowed the jury to award damages based on future lost earnings.[1] Trendwest specifically objected to using future lost earnings as a measure of Ford's damages.[2]
The jury found Trendwest had breached its contract to rehire Ford and awarded Ford $235,000 in damages: $85,000 as "past economic damages" and $150,000 as "future economic damages."[3] Trendwest sought a new trial, arguing the trial court erred by refusing to instruct the jury on the contract formation element of mutual assent and by allowing it to calculate damages with reference to future lost earnings. The trial court denied the motion, and Trendwest timely appealed.
The Court of Appeals affirmed, relying primarily on a wrongful discharge case holding that lost earnings were an appropriate *1226 measure of damages flowing from the breach of an employment at-will contract to hire. Ford, 103 Wash.App. at 390-91, 12 P.3d 613 (citing Lords v. N. Auto. Corp., 75 Wash.App. 589, 604-07, 881 P.2d 256 (1994) (allowing damages based on lost earnings in discrimination suit brought by discharged at-will employee)). The court also distinguished a Court of Appeals decision that affirmed the exclusion of lost earnings evidence when an employer breached an employment at-will contract to hire. Ford, 103 Wash.App. at 390-91, 12 P.3d 613 (citing Bakotich v. Swanson, 91 Wash.App. 311, 957 P.2d 275 (1998)). The Bakotich court concluded the employee bargained for at-will employment and the amount of lost earnings was too speculative for the jury to consider. Bakotich, 91 Wash. App. at 316-17, 957 P.2d 275.
We granted Trendwest's petition for review to resolve the apparent conflict and determine whether lost earnings are an appropriate measure of damages when an employer breaches a contract to hire an at-will employee.

ANALYSIS
The issue presented on appeal is a question of law which we review de novo. Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 698, 952 P.2d 590 (1998).
In Washington, the general rule is that an employer can discharge an at-will employee for "no cause, good cause or even cause morally wrong without fear of liability." Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 226, 685 P.2d 1081 (1984). Conversely, in the absence of a contract stating otherwise, an employee has the absolute right to abandon his or her employment at-will. This common law at-will employment doctrine has been the background employment rule in Washington since at least 1928. See Davidson v. Mackall-Paine Veneer Co., 149 Wash. 685, 688, 271 P. 878 (1928); see also Prescott v. Puget Sound Bridge & Dredging Co., 40 Wash. 354, 357, 82 P. 606 (1905) (Mount, C.J., dissenting) ("where [an employment] contract is general and for an indefinite time, it is terminable at will."). As a device of the common law, the doctrine is subject to modification by the legislature, the courts, and the parties themselves. However, absent statutory, judicial, or contractual modifications to the employment relationship, the at-will employment doctrine limits an employee's reasonable expectations to compensation for work performed. Thompson, 102 Wash.2d at 228-29, 685 P.2d 1081.
There are three recognized exceptions to the general at-will employment rule. First, both Congress and the Washington State Legislature have modified the employment at-will doctrine by limiting employers' rights to discharge employees. See National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1994); Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (1994); chapter 49.60 RCW (Washington's law against discrimination); see also chapter 49.12 RCW (prohibiting discharge of employees for testifying in investigations regarding labor conditions, worker earnings, or sex discrimination); RCW 49.44.090 (prohibiting discharge of employee for being age 40 and over). These laws create an exception to an employer's right to discharge an employee by establishing and protecting the employee's rights in those specific situations.
The Legislature has specifically authorized lost earnings as damages when an employer wrongfully discriminates against an employee. See RCW 49.60.030(2) (creating cause of action allowing discrimination victims to sue for "actual damages"); Xieng v. Peoples Nat'l Bank of Wash., 63 Wash.App. 572, 583, 821 P.2d 520 (1991) ("Actual damages include `damages for injury in fact, as distinguished from exemplary, nominal or punitive damages.'" (quoting Ellingson v. Spokane Mortgage Co., 19 Wash.App. 48, 58, 573 P.2d 389 (1978))), aff'd, 120 Wash.2d 512, 844 P.2d 389 (1993). The Xieng court noted that lost earnings are "a type of actual damages awarded in Title 7 employment discrimination suits which compensates victims `for the continuing future effects of discrimination[.]'" Xieng, 63 Wash.App. at 583, 821 P.2d 520 (quoting Pitre v. W. Elec. Co., 843 F.2d 1262, 1278 (10th Cir.1988)).
Second, we have recognized a narrow public policy exception to an employer's right to discharge an employee. See Smith v. *1227 Bates Technical Coll., 139 Wash.2d 793, 991 P.2d 1135 (2000) (public policy exception to "for-cause" employees); Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 913 P.2d 377 (1996) (discharge of armored truck driver who abandoned post to prevent murder violated public policy). Under this exception, an employer does not have the right to discharge an employee when the termination would frustrate a clear manifestation of public policy. Smith, 139 Wash.2d at 804-08, 991 P.2d 1135; Gardner, 128 Wash.2d at 949-50, 913 P.2d 377. By recognizing this public policy exception, this court expressed its unwillingness to "shield an employer's action which otherwise frustrates a clear manifestation of public policy." Thompson, 102 Wash.2d at 231, 685 P.2d 1081. Absent reinstatement, awarding a wrongfully terminated employee his or her lost earnings is the only reliable method of remedying the employee's injury.
Lost earnings are available in these claims because an action for discharge in violation of public policy sounds in tort. "Damages" is a term used in torts to denote "an award made to a person by a competent judicial tribunal ... because of a legal wrong done to him by another." Restatement (Second) of Torts § 902 cmt. a (1979). Tort actions are maintainable for a variety of reasons: to compensate injured parties; to determine parties' rights; to punish wrongdoers and deter wrongful conduct; and to vindicate parties and deter retaliation. Restatement (Second) of Torts § 901. The "measure of damages in tort [is] based upon the purposes for which actions of tort are maintainable." Restatement (Second) of Torts § 901. Awarding lost earnings to an employee discharged in violation of public policy compensates the employee's pecuniary loss, punishes the employer and deters future wrongful discharges, and vindicates the employee's actions that gave rise to the initial termination. The fact such a remedy exists is not a testament to the ease with which it can be calculated. Rather, such a remedy reflects an understanding that if it were unavailable, the courts could not enforce sound public policy by remedying legal wrongs.
Third, employers and employees can contractually modify the at-will employment relationship, eschewing the common law rule in favor of negotiated rights and liabilities. Thompson, 102 Wash.2d at 228-30, 685 P.2d 1081. An employer can bargain away its right to discharge an employee without cause by contracting not to do so. Thompson, 102 Wash.2d at 228, 685 P.2d 1081. The law governing this exception is not a species of the employment at-will doctrine; it is the law of contracts. Therefore, the law of contracts governs an injured party's right to recover damages under this exception. Thompson, 102 Wash.2d at 230-32, 685 P.2d 1081. Unlike a wrongful discharge, a breach of contract is neither immoral nor wrongful; it is simply a broken promise. See Thompson, 102 Wash.2d at 231-32, 685 P.2d 1081.
Ford's claim is based on Trendwest's breach of contract to rehire him as an at-will employee. To the extent possible, the law of contracts seeks to protect an injured party's reasonably expected benefit of the bargain:
Contract damages are ordinarily based on the injured party's expectation interest and are intended to give that party the benefit of the bargain by awarding him or her a sum of money that will, to the extent possible, put the injured party in as good a position as that party would have been in had the contract been performed.
Mason v. Mortgage Am., Inc., 114 Wash.2d 842, 849, 792 P.2d 142 (1990). "The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds...." Restatement (Second) of Contracts § 356 cmt. a (1981). See also Restatement (Second) of Contracts § 355 cmt. a ("courts in contract cases do not award damages to punish the party in breach or to serve as an example to others unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.").
"Employment contracts are governed by the same rules as other contracts." Kloss v. Honeywell, Inc., 77 Wash.App. 294, 298, 890 P.2d 480 (1995). Thus, Ford argues, *1228 once the breach of contract was established, Ford's damages were limited only by their foreseeability. See Gaglidari v. Denny's Rests., Inc. 117 Wash.2d 426, 446, 815 P.2d 1362 (1991) ("damages recoverable for a breach of contract are those which `may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from [the] breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.'" (quoting Hadley v. Baxendale, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854))).
But a contract confers no greater rights on a party than it bargains for. In other words, a party to a contract has a contractual right only to that which it bargained forits reasonable expectation. The parties do not dispute Ford bargained for at-will employment, nor does Ford dispute Trendwest could have hired him as an at-will employee and then immediately fired him without fear of liability. An employee's expectations under an employment at-will contract are no different from the employment itself. Although Ford presents compelling facts that suggest he was treated unfairly by Trendwest, we are unwilling to abandon the long-standing distinction between at-will employment and for-cause employment. Since we are dealing with an at-will employment contract for hire and not a for-cause employment contract for hire, the question is whether we should treat the breach of one different from the breach of the other. The answer is yes, and the reason is because if we treat them the same (i.e., if the breach of either gives rise to expectation damages), there will be no difference between at-will or for-cause employment.
When the parties contracted for at-will employment, Ford had no greater expectations than an at-will employee, and Trendwest had no fewer rights than an at-will employer. The contract did not modify the at-will employment relationship, and Ford's claim does not fall within a recognized exception to the employment at-will doctrine. Ford does not allege his discharge was discriminatory nor does he claim it violated public policy. Although Ford entered into a contract with Trendwest, neither party bargained for something other than employment at-will. Nothing in this contract changed the at-will employment relationship.
The Court of Appeals in Bakotich reached the right result but for the wrong reasons. The court held that in a breach of an employment at-will contract case, anticipated lost earnings evidence is "highly speculative and [therefore] properly excluded by the trial court." Bakotich, 91 Wash.App. at 316-17, 957 P.2d 275. But to simply characterize lost earnings as speculative does not fairly explain why they are available to remedy a wrongful discharge but not a breach of contract. We hold lost earnings cannot measure damages for the breach of an employment at-will contract because the parties to such a contract do not bargain for future earnings. By its very nature, at-will employment precludes an expectation of future earnings. Because Ford did not bargain for future earnings, he cannot claim they measure the harm he sustained by Trendwest's breach. To hold that Ford reasonably expected future earnings under his employment at-will contract would create a new exception to the at-will employment doctrine not supported in law.[4]
Other courts have reached the same result.[5] The Michigan Court of Appeals addressed an almost identical factual situation and reached the same conclusion. Sepanske v. Bendix Corp., 147 Mich.App. 819, 384 N.W.2d 54 (1985) (per curiam). In that case, Sepanske left his employment at-will position *1229 after relying on Bendix's promise to rehire him in an equal or better position. Sepanske, 147 Mich.App. at 822-23, 384 N.W.2d 54. A jury found Bendix breached its contract, but the appellate court limited Sepanske's damages to a nominal amount. The court held Sepanske contracted for at-will employment and "he had no actionable expectation that any such restoration would be permanent." Sepanske, 147 Mich.App. at 829, 384 N.W.2d 54. Because an employer can alter or terminate at-will employment without consequence, "[t]here [was] no tangible basis upon which [to assess] damages where plaintiff's expectation was for an at-will position which could have been changed or from which he could have been terminated without consequence." Sepanske, 147 Mich. App. at 829, 384 N.W.2d 54. We agree with this analysis. Sepanske is consistent with our case law, and Ford has cited no authority to support his argument that a party to an employment at-will contract is entitled to future earnings. Ford, therefore, falls under the default rule: an employer can discharge an at-will employee for "no cause, good cause or even cause morally wrong without fear of liability." Thompson, 102 Wash.2d at 226, 685 P.2d 1081.

CONCLUSION
Trendwest breached an employment at-will contract with Ford under which Ford held no reasonable expectation of future earnings. Ford is, therefore, entitled to the amount of damages available in all contract actions "`where, from the nature of the case, some injury has been done, the amount of which the proofs fail entirely to show.'" Gilmartin v. Stevens, 43 Wash.2d 289, 294, 261 P.2d 73 (1953) (quoting Bellingham Bay & British Columbia R.R. Co. v. Strand, 4 Wash. 311, 314, 30 P. 144 (1892)). We reverse the Court of Appeals as to the damages award and remand this case for entry of nominal damages on Ford's breach of contract claim. We further vacate the award of attorney fees.
ALEXANDER, C.J., SMITH, MADSEN, BRIDGE, and OWENS, JJ., concur.
CHAMBERS, J. (dissenting).
Regrettably, the majority has confused an element of duty with an element of damages. In analyzing damages, the majority has confused indefinite employment with day to day employment. The majority has announced a new rule of law based upon a new analytical approach which dramatically departs from our prior jurisprudence.
To analyze this case, it is important to remember Bobby Ford's theory is grounded in breach of contract, and not tort. Although the most common employment contract is a negotiated collective bargaining agreement, this Court has long recognized that other types of agreements and countervailing public policies can effectively modify an at-will employment relationship and, if breached, give rise to actual damages. A brief discussion of our jurisprudence is essential to any analysis.
The seminal case is Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 685 P.2d 1081 (1984). Thompson, an at-will employee, was a divisional comptroller for St. Regis. After 17 years he was asked to resign; the only reason given was that he had "`stepped on somebody's toes.'" Thompson, 102 Wash.2d at 221, 685 P.2d 1081. The next day, he was awarded a $10,000 performance bonus for his last year's performance. Id. Thompson sued St. Regis for wrongful discharge and breach of contract, and the employer successfully moved for summary judgment on the basis of the at-will employment doctrine. Thompson argued on appeal the at-will employment relationship between him and his employer had been modified by the St. Regis employee Policy and Procedure Guide, which promised that termination from employment, "`will be processed in a manner which will at all times be fair, reasonable and just.'" Thompson, 102 Wash.2d at 222, 685 P.2d 1081. This Court found the language of the policy manual compelling and unanimously reversed the trial court, concluding that when an employer chooses to establish personnel policies or practices, and makes them known to its employees, the employment relationship is enhanced and is no longer merely at-will. The employer secures a more orderly, cooperative, and loyal work force by giving the employee *1230 the peace of mind associated with the security of reliance on published policies. To prevent the inequity of allowing the employer to enjoy the benefits of its own promise without the burdens, we held:
if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.
Thompson, 102 Wash.2d at 230, 685 P.2d 1081. While we did not reach the question of damages, clearly we were not willing to treat St. Regis's promise as illusory. Refusing to grant meaningful damages would undercut the clear mandate of Thompson.
Whether termination from an apparent at-will employment relationship could give rise to a breach of contract action was considered again in Gaglidari v. Denny's Restaurants, Inc., 117 Wash.2d 426, 815 P.2d 1362 (1991). Denny's summarily fired Gaglidari, a bartender. Gaglidari had been hired as an at-will employee in 1979, and received an employee handbook. She acknowledged receipt and agreed in writing to abide by the rules of the handbook. Seven years later, Gaglidari was given an alcoholic beverage handbook. Under both handbooks, fighting was grounds for immediate dismissal. The handbooks also provided for pretermination review by a specific company executive based upon the employee's length of service. In 1987, while off duty, Gaglidari went to the restaurant lounge where she worked. While she was helping a fellow bartender close the lounge, a customer hit her in the face. What happened next is unclear, but Gaglidari claims she went to the floor and did not actively participate in any altercation. The customer clearly suffered injury; he had to be taken to the hospital for treatment and Gaglidari was summarily dismissed. She brought suit and was awarded $55,000 in economic damages, $75,000 in noneconomic damages, and $8,000 in attorney fees under RCW 49.48.030. Denny's sought review, and we affirmed in part.
We concluded as a matter of law that the handbook formed an enforceable contract between Denny's and Gaglidari:
Defendant extended an offer by providing the handbook and training plaintiff on alcoholic beverage service in accordance with the requirements contained in the handbook. Plaintiff accepted the offer by signing for the handbook and participating in the training. The consideration was plaintiff's continuation of her employment.
Gaglidari, 117 Wash.2d at 435, 815 P.2d 1362. We also concluded that, while the company was entitled to dismiss Gaglidari if its belief she was fighting was well founded, it was not entitled under the contract to dismiss her summarily, but was instead required to follow the specified pretermination procedures. We remanded for a determination of whether the company breached its contract. Again, we were not willing to treat the contract as illusory there, even though it was in the larger context of at-will employment. We implicitly approved loss of wages as an appropriate measure of damages if the contract were breached.
Future lost wages as a measure of damages for a breach of contract in an at-will employment relationship was considered and refined in Kohn v. Georgia Pacific Corp., 69 Wash.App. 709, 850 P.2d 517, review denied, 122 Wash.2d 1010, 863 P.2d 72 (1993). Kohn, an at-will employee, brought suit against her employer for breach of the medical leave policy and prevailed, receiving $41,588 in past damages and $130,000 in future damages. Kohn had taken an approved medical leave in compliance with the company's operating policy manual which specifically provided:
"When a leave is taken in accordance with these conditions and the employee furnishes the company with a licensed physician's statement that the employee is medically able to return to work as of a stated date, the company will, within a reasonable time period, reinstate the employee in the same job if it still exists and is available, or an available job of like status and pay for which the employee is qualified without loss of continuous service credit." *1231 Kohn, 69 Wash.App. at 713-14, 850 P.2d 517. However, when Kohn sought to return from medical leave, she found her job had been eliminated, and she was not offered other available positions for which she may have been qualified.
Georgia-Pacific, like Trendwest Resorts, Inc., argued that Kohn was merely an at-will employee and could be dismissed for any reason or no reason at all. Kohn countered that there had been a breach of contract and that the breach of contract could be determined as a matter of law. The Kohn court concluded that the existence of a contract and the breach thereof was a question of fact for the jury. Kohn, 69 Wash.App. at 719, 850 P.2d 517; accord Swanson v. Liquid Air Corp., 118 Wash.2d 512, 826 P.2d 664 (1992). Georgia-Pacific further argued, as does Trendwest here, that because Kohn's employment was at-will, there should be no claim for future damages. The Kohn court, noting evidence the employees hired for the positions Kohn sought were still employed by Georgia Pacific, concluded past and future damages were proper jury questions. Kohn, 69 Wash.App. at 725-26, 850 P.2d 517. That court treated at-will employment as just another factor in determining whether damages were reasonably foreseeable. We denied review of Kohn, but its reasoning is sound.
An at-will employment contract is not a contract to work from day to day, but a contract for employment for an indefinite period of time. Lasser v. Grunbaum Bros. Furniture Co., 46 Wash.2d 408, 410, 281 P.2d 832 (1955); Davidson v. Mackall-Paine Veneer Co., 149 Wash. 685, 688, 271 P. 878 (1928). Ford had such a contract. The mere fact that Ford's employment was putatively at-will does not make the damages he suffered for breach of contract unduly speculative or illusory. Calculating front pay in an at-will employment contract case is no more inherently speculative than calculating a plaintiff's disappointed expectancy in any breach of contract case. See Hadley v. Baxendale, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854) (calculating contract damages as those which "may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from [the] breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.").
The Court of Appeals considered a similar issue in Lords v. Northern Automotive Corp., 75 Wash.App. 589, 881 P.2d 256 (1994), overruled on other grounds in Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 308, 898 P.2d 284 (1995). While Lords mostly concerned a disability discrimination case in an at-will employment setting, the court specifically held that "[f]ront pay should be awarded `for a reasonably certain period of time that does not exceed the likely duration of the terminated employment.'" Lords, 75 Wash.App. at 605, 881 P.2d 256 (quoting Hayes v. Trulock, 51 Wash.App. 795, 802, 755 P.2d 830 (1988); (quoting Smith v. Atlas Offshore Boat Serv., Inc., 552 F.Supp. 128, 130 (S.D.Miss.1982))). The Court of Appeals specifically rejected the trial court's arbitrary limit of five years, and remanded the case for a new trial on economic damages, correctly concluding: "[f]ront pay, as well as back pay, is a consideration for the jury." Lords, 75 Wash.App. at 607, 881 P.2d 256. The same principle should apply here.
Our jurisprudence is clear. Washington law recognizes the existence of a meaningful remedy for those who are wrongfully terminated from employment, whether their claims are grounded in tort, accord Hayes v. Trulock, 51 Wash.App. 795, 802, 755 P.2d 830 (1988); Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), or breach of contract, cf. Gaglidari, 117 Wash.2d 426, 815 P.2d 1362; Lords, 75 Wash.App. at 605, 881 P.2d 256; Kohn, 69 Wash.App. at 725-26, 850 P.2d 517. At-will employment is a contract to work indefinitelynot day to day. Thompson, 102 Wash.2d at 227, 685 P.2d 1081; Lasser, 46 Wash.2d at 410, 281 P.2d 832; Davidson, 149 Wash. at 688, 271 P. 878. Once breach of contract is established, the mere fact an employer could have fired the employee without liability the next day or under some other circumstance not amounting to breach of contract does not render the actual breach of contract null or render a claim for lost wages speculative. Accord Mason v. Mortgage Am. Inc., 114 *1232 Wash.2d 842, 849, 792 P.2d 142 (1990); Lincor Contractors, Ltd. v. Hyskell, 39 Wash. App. 317, 320, 692 P.2d 903 (1984).
Inexplicably, the majority concludes:
We hold lost earnings cannot measure damages for the breach of an employment at-will contract because the parties to such a contract do not bargain for future earnings. By its very nature, at-will employment precludes an expectation of future earnings.
Majority at 1228. This is a regrettable departure from our prior jurisprudence. The majority cites only one Washington case for support, a Court of Appeals opinion, Bakotich v. Swanson, 91 Wash.App. 311, 957 P.2d 275 (1998), which the majority acknowledges was decided for the wrong reasons. The Bakotich court grounded its decision on the theory that lost wages, as an element of damages in an at-will employment relationship, is too speculativean analysis that the majority concedes is simply wrong. Majority at 1228.
There is no logical reason to provide a remedy that includes meaningful damages for at-will employees who are terminated in violation of statute or public policy, but to provide only a remedy without meaningful relief to the same employees who are terminated in violation of a proven contract. I therefore propose a different analytical approach to Ford's claim against Trendwest. First, the trier of fact should determine whether a contract was created modifying the at-will employment relationship; second, if a contract was created, whether it was breached; and third, the measure of any damages. All of these issues should be finally determined by the trier of fact.
The jury was, appropriately, asked if there was a contract, and whether that contract was breached by Trendwest. See Jury Instruction 13.[1] Ford presented evidence, and the jury found, that Trendwest had offered to hold his job open while Ford participated in the Employee Assistance Program, and to return him to work upon successful completion of the program. These facts are strikingly similar to the facts in Kohn, where the employee was promised a job of like status and pay upon her return from medical leave. Further, the jury was instructed that Ford had the burden to prove actual damages attributable to that breach of contract. See Jury Instruction 14.[2] Ford was required to prove future damages with reasonable certainty. See Jury Instruction 15.[3]
In Ford's first year as an Upgrades sales representative, he earned about $80,000. Br. *1233 of Resp't at 6. Online sales representatives, by contrast, made about half that. Ford presented evidence of the contract in the form of a letter from the Director of Staff Services at Trendwest to Ford, which said in part: "[u]pon successful completion of the Employment Assistance Program, you will be allowed to return to a position equal to that which you held." Clerk's Papers at 100006. The jury found this compelling and awarded Ford $235,000 in damages. The trial court granted Ford $90,000 in attorney fees and $1,215 in costs. We should affirm.
Reading our cases together, it is clear that Washington law recognizes that wrongful discharge, whether it sounds in tort or contract, gives rise to a cause of action and to meaningful damages. Bobby Ford pleaded and proved a violation of a contract. His damages should properly be entrusted to the jury to determine. Therefore, I would affirm the Court of Appeals.
SANDERS and IRELAND, JJ., concur.
NOTES
[1] Jury instruction 15 stated:

"With regard to the plaintiff's breach of contract claim, in your determination of damages you are to use the following measure of damages, in the amounts proven by the plaintiff:
"Plaintiff would be entitled to recover future lost earnings for such period of time as he is able to prove with reasonable certainty is attributable to the breach." Clerk's Papers at 547.
[2] Trendwest raised this issue in its petition for review to this court. Ford argues Trendwest waived its right to appeal the use of lost earnings to measure Ford's damages because Trendwest proposed a damages instruction submitted to the jury. But a party may object to its own instruction and, if it does so, it preserves the issue for appeal. See Coyle v. Mun. of Metro. Seattle, 32 Wash.App. 741, 743-44, 649 P.2d 652 (1982).
[3] "Past economic damages" referred to the amount of Ford's losses from the breach of contract date to the date of the jury verdict. "Future economic damages" referred to the amount of Ford's losses from the date of the jury verdict forward to a point the jury considered to be Ford's reasonably expected length of employment.
[4] For example, if an employer breached a contract to hire a prospective at-will employee and the prospective employee could recover lost future earnings, a prospective employee would have greater rights than an actual at-will employee. In other words, a prospective at-will employee would have a greater expectation in future income than an actual at-will employee. This illogical exception would swallow the at-will employment rule.
[5] Sepanske v. Bendix Corp., 147 Mich.App. 819, 384 N.W.2d 54 (1985) (per curiam); see also Clark v. Beverly Enters.-Mo., Inc., 872 S.W.2d 522 (Mo.Ct.App.1994); Bennett v. E. Rebuilders, Inc., 52 N.C.App. 579, 279 S.E.2d 46 (1981).
[1] "The plaintiff Bobby Ford has the burden of proving each of the following propositions on the plaintiff's breach of contract claim:

"(1) Trendwest entered into a contract with Bobby Ford;
"(2) The terms of the contract included any one of the following promises:
"a. to hold his job or position open while Ford participated in the EAP program;
"b. to return him to work upon successful completion of the program; and
"c. to return him to work during outpatient treatment.
"(3) Trendwest Resorts breached the contract in one or more of the following ways:
"a. by not holding his job or position in Upgrade sales open while Ford participated in the EAP program; or
"b. by telling him Trendwest would not return him to his Upgrades position upon successful completion of the program; or
"c. by not returning him to work during outpatient treatment.
"(4) The plaintiff Bobby Ford was not in material breach of the contract, or that he had performed or offered to perform his obligations under the contract;
"(5) That plaintiff was damaged as a result of defendant's breach.
"If you find from your consideration of all the evidence that any of these propositions has not been proved, your verdict should be for the defendant Trendwest. On the other hand, if each of these propositions has been proved, then you must consider the affirmative defenses claimed by defendant Trendwest." Clerk's Papers (CP) at 543-44.
[2] "In order to recover actual damages, the plaintiff has the burden of proving that the defendant breached a contract with him, and that plaintiff incurred actual economic damages as a result of the defendant's breach, and the amount of those damages." CP at 545.
[3] "With regard to plaintiff's breach of contract claim, in your determination of damages you are to use the following measure of damages, in the amounts proven by the plaintiff:

Plaintiff would be entitled to recover future lost wages for such period of time as he is able to prove with reasonable certainty is attributable to the breach." CP at 547.