220 P.3d 1264 (2009)
153 Wash.App. 434
Timothy B. JOLLEY, M.D., Appellant,
v.
Regence BLUESHIELD, Respondent.
No. 38061-7-II.
Court of Appeals of Washington, Division 2.
December 8, 2009.
*1265 Edward R. Coulson, Foster Pepper PLLC, Kelly Ann Lonergan, Attorney at Law, Seattle, WA, for Appellant.
Stephania Camp Denton, Mills Meyers Swartling, Seattle, WA, for Respondent.

PUBLISHED OPINION
BRIDGEWATER, P.J.
¶ 1 Dr. Timothy B. Jolley appeals the Pierce County Superior Court's grant of summary judgment, dismissing his claim that Regence BlueShield (Regence) failed to provide him with a fair review after Regence terminated him as a health care provider. Dr. Jolley also appeals the summary judgment dismissal of his claim under the Washington Consumer Protection Act (CPA), chapter 19.86 RCW. We hold that Regence provided Jolley a fair review and his CPA claim fails. We affirm.

FACTS
¶ 2 Dr. Jolley is a pediatrician in Puyallup, Washington. In 1999, Dr. Jolley and Regence *1266 entered into a practitioner agreement under which Dr. Jolley provided services for Regence health care subscribers. The agreement provided for a two-phase dispute resolution process. WAC 284-43-320(11) requires a provision for dispute resolution.[1]
¶ 3 The dispute resolution provision applicable to Regence providers requires that the provider first exhaust the Regence internal appeal process, which itself has two stages. In the level one appeal, the provider submits a written request for reconsideration of the adverse decision, giving a detailed description of the issues in dispute and any evidence or documentation supporting the provider's position. The level one appeal committee is a panel of other Regence providers, medical management representatives, and administrative personnel.
¶ 4 If the provider is not satisfied with the level one appeal, the provider can submit a written request for an in-person meeting for a level two appeal. The provider may submit additional, pertinent information supporting the provider's perspective. The level two appeal committee is a panel of Regence medical management, a chief medical officer, one or two medical directors, the vice president of provider network management, a legal representative, the assistant vice president of health care services, the manager of credentialing, and administrative personnel. If the provider disagrees with the resolution of the internal appeal process, the provider may demand arbitration.
¶ 5 In 2000, the parties amended the practitioner agreement to satisfy WAC 284-43-322, which provided that no process for dispute resolution arising out of a participating provider contract will be fair under RCW 48.43.055 unless it includes a formal process for dispute resolution and provides at least 30 days after the action giving rise to the complaint to initiate the dispute resolution process. WAC 284-43-322(1), (3). Carriers cannot require alternative dispute resolution to the exclusion of judicial remedies, although they can require it before judicial remedies. WAC 284-43-322(4). Under RCW 48.43.055, health carriers must file with the insurance commission their procedures for review and adjudication of complaints initiated by health care providers. "Procedures filed under [RCW 48.43.055] shall provide a fair review for consideration of complaints." RCW 48.43.055.
¶ 6 The amended agreement included three provisions addressing termination. The first is an at-will provision.[2]
The parties agree that they are contracting at will. Notwithstanding any written or oral representations to the contrary, either party may terminate this Agreement at any time and for any reason upon sixty (60) days written notice to the other party. The terminating party has sole discretion to determine whether a reason exists for termination and whether that reason justifies termination. When the Company terminates this Agreement, the Company will provide the Provider Appeals Process for the Practitioner to obtain the Company's reconsideration of the bases for its decision, but the Company retains sole and ultimate discretion to decide whether a reason exists and justifies termination.
I CPat 81.
¶ 7 The second termination provision provides:

*1267 This Agreement shall terminate immediately upon the suspension, revocation or nullification of the Practitioner's license to practice medicine in the state(s) where the Practitioner practices. It shall also terminate immediately in the event the Practitioner is convicted of a felony or is expelled or suspended from the Medicare or Medicaid programs.
I CPat 82.
¶ 8 The third provision involving termination states:
For and in consideration of the parties' agreeing to enter into this agreement it is agreed and acknowledged by the parties that ability to contract with the other is a privilege and not a right.
The Practitioner agrees that if he or she does not meet the Company's Credentialing criteria at any time, including during the Recredentialing process, this Agreement may be immediately terminated at the Company's option, and the Practitioner shall have no right to be a participating provider with the Company.
I CP at 82. Regence's credentialing criteria include the following:
To be eligible for participation, practitioners must meet and maintain the following criteria[:]
....
5. The practitioner's professional State license, registration or certification in any State must be current and free of any informal or formal disciplinary action(s) (i.e. restriction, probation, limitation or condition) relating to the practitioner's clinical conduct.
III CP at 494.
¶ 9 On October 16, 2003, the Washington State Department of Health Medical Quality Assurance Commission (MQAC) issued a statement of charges against Dr. Jolley, alleging that he had ongoing sexual relationships with several of his patients' mothers.
¶ 10 The statement of charges indicated that MQAC had previously charged Dr. Jolley with similar improper actions in the late 1980s and early 1990s and suspended his license for five years. MQAC agreed to stay that suspension if Dr. Jolley agreed to conditions on his license. Such conditions included requiring him to have a female chaperone accompany him in the presence of female patients and participating in therapy. The statement of charges indicates that MQAC reinstated Dr. Jolley's license in full in 1992, after determining that Dr. Jolley complied with the conditions.
¶ 11 On October 20, 2003, MQAC again suspended Dr. Jolley's license to practice medicine. On October 24, 2003, the trial court granted a 30-day stay of Dr. Jolley's suspension, subject to several conditions. The conditions included that Dr. Jolley continue voluntary treatment, agree to have a chaperone present when examining a female patient or while in the presence of a female while seeing a patient, and compliance with the MQAC appeal procedure.
¶ 12 In January 2004, Dr. Jolley and MQAC entered into an agreed order, in which Dr. Jolley acknowledged that he had committed unprofessional conduct, both presently and in the late 1980s, as defined by RCW 18.130.180(1). That statute provides that unprofessional conduct includes, in part: "The commission of any act involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession, whether the act constitutes a crime or not." RCW 18.130.180(1).
¶ 13 The agreed MQAC order suspended Dr. Jolley's license, but stayed the suspension, placing Dr. Jolley on probation for 10 years with conditions. The conditions required that Dr. Jolley have a female chaperone present whenever in the presence of a female patient or a patient who is accompanied by a female parent or guardian. Dr. Jolley must have a chaperone on the phone if he speaks on the phone with a female parent or guardian of a patient. Dr. Jolley must provide a written statement to the parent or guardian of each of his patients describing his sexual relationships with his patients' mothers and MQAC's subsequent discipline. The order also precludes Dr. Jolley from having social contact with any of his patients' female parents or guardians.
¶ 14 As a result of MQAC's 2004 suspension of Jolley's medical license, the Washington Department of Social and Health Services (DSHS), the group that administers Medicare, Medicaid, and other state funded *1268 medical care programs, terminated their provider agreement with Dr. Jolley. First Choice Health, another preferred provider network, terminated its contract with Dr. Jolley but later reinstated him.
¶ 15 On October 22, 2003, Regence sent a letter to Dr. Jolley informing him that his contract with Regence had automatically terminated when the State suspended his license. It explained that he had a right to appeal the termination. Dr. Jolley initiated the internal appeal process. The level one appeal committee voted to uphold the termination.
¶ 16 Regence then sent Dr. Jolley a letter stating:
The decision to terminate was based on Dr. Jolley's failure to meet Regence's credentialing criteria due to certain conditions placed on his license. Dr. Jolley has appealed his termination decision and he is scheduled to appear before the Level Two panel on December 8, 2003.
III CP at 426. Dr. Jolley and his counsel testified at the level two hearing regarding Dr. Jolley's personal reasons for the behavior that gave rise to the MQAC disciplinary action and the conditions that the trial court imposed. Dr. Jolley argued that, with the state-imposed conditions, he would not pose a risk to Regence members. Unconvinced, the level two panel voted to uphold the termination.
¶ 17 Following the level two appeal, Dr. Jolley filed an arbitration demand. Without further clarification, the arbitrator ordered that Regence wrongfully terminated Dr. Jolley when it failed to reinstate him after it received notice that the trial court had invalidated his suspension (this is not factually correct, but neither is it relevant to resolution of this case). The arbitrator further ordered that Regence failed to provide Dr. Jolley with an appeals process that met procedural due process requirements. The arbitrator reinstated Dr. Jolley's contract with Regence, but ordered that: "Regence retains all rights to terminate Dr. Jolley for any reason permitted under the contract, assuming all substantive and procedural due process rights are accorded or notice per the agreement is given." II CP at 230. The arbitrator awarded damages to Dr. Jolley, which Regence paid.
¶ 18 On October 5, 2004, Regence terminated Dr. Jolley under the at-will provision of the agreement Regence advised Dr. Jolley in its termination letter that:
Active participation with Regence BlueShield requires you to meet our Health Care Practitioner Criteria for Participation and Termination, a copy of which is attached hereto. These criteria include the requirement that your professional license, registration or certification be current and free from any formal or informal disciplinary actions, including restriction, probation, limitation or conditions governing the terms under which you may continue to practice. Accordingly, as your license has been suspended and stayed with terms and conditions, you no longer meet Regence BlueShield participation criteria....
Pursuant to Section 7.2 of the Practitioner Agreement between you and Regence BlueShield, the Practitioner Agreement may be terminated by either party as follows:
"The parties agree that they are contracting at will. Notwithstanding any written or oral representations to the contrary, either party may terminate this Agreement at any time and for any reason upon sixty (60) days written notice to the other party. The terminating party has sole discretion to determine whether a reason exists for termination and whether that reason justifies termination."
Regence BlueShield has determined, in its sole discretion and in accordance with the terms of the Practitioner Agreement, that your failure to meet the participation criteria justifies termination.
III CP at 518.
¶ 19 Dr. Jolley appealed the termination decision, arguing that Regence should not use the MQAC conditions as a reason to terminate his contract because "many Regence providers have conditions on their licenses" and "Dr. Jolley [should be] given the same consideration as other providers in dealing with conditions on a provider's license." II CP at 239-40. The level one panel voted to uphold the termination. The level two panel reviewed Dr. Jolley's written materials, including a January 31, 2005 letter *1269 in which Dr. Jolley asked Regence to reinstate him because he had been complying with the conditions on his license and because Regence contracts with other providers who have conditions on their licenses. Dr. Jolley again discussed his personal circumstances and argued that the conditions imposed on his license would adequately protect Regence members from harm. The panel also considered letters from families discussing their satisfaction with Dr. Jolley. The level two panel again upheld the termination.
¶ 20 Dr. Jolley again demanded arbitration. The arbitrator considered the RCW 48.43.055 requirements in the context of an at-will termination.
On reflection, there really can be no conclusion other than that Regence terminated Dr. Jolley at-will but had reasons for doing so. Having reasons for doing so[] does not convert an at-will termination to "for cause." (See Ford v. Trendwest Resorts, Inc., 146 Wash.2d 146, 43 [P.3d] 1223 (2002) which clearly restates the long standing principle that an at-will employee can be termination [sic] "for `no cause, good cause or even cause morally wrong.'" ([c]iting Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 226, 685 P.2d 1081 (1984[))]). Nevertheless, this does not end the matter because Ford also makes clear that "statutory, judicial, or contractual modifications" may alter the general rules.
III CP at 453. The arbitrator concluded that a fair review process requires that Regence notify the provider if there is a reason for the decision to terminate at will and that Regence give the provider a fair opportunity to address the reason, but that RCW 48.43.055 gives the provider only the opportunity to "state his case." III CP at 454. Thus, if Regence failed to allow Dr. Jolley fair review to state his case, the arbitrator noted that it would constitute a breach of the provider agreement, but that damages would be available only if such fair review would have changed Regence's mind.
¶ 21 The arbitrator considered all the evidence the parties presented, including witness testimony. The arbitrator found in favor of Regence on all issues:
I was persuaded by a clear preponderance of the evidence that Dr. Jolley received a fair review of his termination. He was given appropriate notice with adequate specificity, multiple opportunities to present his case, multiple reviews by fair and impartial review panels and an outcome that was consistent with Regence policy and practice. I further conclude on a clear preponderance of the evidence that the additional information that was presented on behalf of Dr. Jolley during this hearing (specifically the Santé and Meadows records and Dr. Jolley's testimony) would not have changed the outcome at either Regence appeal level.
I further find that Dr. Jolley failed to prove that his 2004 termination was retaliatory, that there was a violation of public policy or that there was a violation of the Consumer Protection Act.
III CP at 459. Regence terminated Dr. Jolley's practitioner agreement effective August 28, 2005.[3]
¶ 22 The King County Superior Court affirmed the arbitrator's ruling and Dr. Jolley appealed to Division One of this court, arguing that arbitrator's rules were not binding under RCW 48.43.055 and WAC 284-43-322. Jolley v. Regence BlueShield, noted at 139 Wash.App. 1016, 2007 WL 1733215 (2007). While his appeal was pending, our Supreme Court ruled that RCW 48.43.055 and WAC 284-43-322 prohibit health carriers "from imposing on health care providers a binding form of dispute resolution." Kruger Clinic Orthopaedics, LLC v. Regence BlueShield, 157 Wash.2d 290, 306, 138 P.3d 936 (2006).
¶ 23 Dr. Jolley filed the instant litigation, contending that Regence breached the agreement by failing to provide him with fair review of its decisions to terminate. Regence filed a counterclaim to recover the damages it paid to Dr. Jolley when it believed the arbitration to be binding. Both parties moved the trial court for summary judgment, with Regence claiming that undisputed evidence proved that Dr. Jolley received *1270 a fair review, and with Dr. Jolley contending that, as a matter of law, Regence failed to provide a fair termination and appeals process
¶ 24 The trial court found that Dr. Jolley received a fair review and denied his summary judgment motion.
I read everything, went back and read things twice, some of these materials especially your memoranda of law and looked at the statute, considered the procedural summary, the fact that this has been through what I believe to be two fair reviews. I believe that Dr. Jolley has had a full and fair opportunity to have all issues reviewed by Regence and by a neutral fact finder. And that may be perhaps where I commit error if you're going to appeal this, where Division II may question what I do, but I did take notice of [the arbitrator's] materials because I think it was included in a fair review.
Even assuming that that should not have been included in a fair review and that a fair review did not occur procedurally, based on the arguments made by [Jolley's counsel], because the reasons were not stated or was a subterfuge or were not fully identified, I fail to see the genuine issue of material fact as to whether anything would have happened differently.
VRP at 26-27. Jolley's counsel told the trial court that it was reversible error to adopt the arbitrator's findings. The trial court clarified:
No, that is incorrect. I have not adopted the arbitrator's finding. I find that this whole scenario including two Level Ones, two Level Twos, the arbitrator's process in 2004, the arbitrator's process in 2005, was collectively a fair review ... The law of this case is that [the arbitrator's decision] is not binding and I understand that. I am not finding that the arbitrator's decision is binding. I'm simply finding that collectively all those processes together were fair review.
VRP at 31. The trial court granted Regence's summary judgment motion to dismiss Jolley's claims, but denied Regence's summary judgment motion to return the damages it paid to Dr. Jolley.

ANALYSIS

I. Fair Review
¶ 25 Dr. Jolley first argues that the trial court erred by dismissing on summary judgment his claim that Regence failed to provide a fair review of his termination. When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court. Kahn v. Salerno, 90 Wash.App. 110, 117, 951 P.2d 321, review denied, 136 Wash.2d 1016, 966 P.2d 1277 (1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one on which the outcome of the litigation depends, in whole or in part. Morris v. McNicol, 83 Wash.2d 491, 494, 519 P.2d 7 (1974). We must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993). But the nonmoving party must set forth specific facts to defeat a motion for summary judgment rather than rely on bare allegations. Young v. Key Pharms., Inc., 112 Wash.2d 216, 225-226, 770 P.2d 182 (1989).
¶ 26 As discussed above, procedures filed under RCW 48.43.055 must provide a fair review of the provider's complaints. The statute does not define "fair review," but due process, at a minimum, requires notice and an opportunity to be heard. Soundgarden v. Eikenberry, 123 Wash.2d 750, 768, 871 P.2d 1050, cert. denied, 513 U.S. 1056, 115 S.Ct. 663, 130 L.Ed.2d 598 (1994). Thus, Dr. Jolley contends that he was, at a minimum, entitled to notice of the actual reasons and factors that Regence's internal committees would consider and an opportunity to be heard.[4]
*1271 ¶ 27 Dr. Jolley asserts that, for his second termination, Regence initially told him that it was terminating him at will but that after the level one and level two appeals, Regence acknowledged it actually terminated him for conditions on his license. Accordingly, he alleges that he did not have the opportunity to present all relevant information concerning the conditions on his license or provide evidence that Regence employed other providers with license conditions. Essentially, Dr. Jolley is arguing that (1) he did not receive notice of the reasons supporting his termination and (2) he had evidence that would have changed Regence's decision.

A. Notice
¶ 28 Dr. Jolley alleges that Regence did not tell him that it based his second termination on the conditions on his license until after he concluded the level one and level two appeals. This is not correct.
¶ 29 When Regence informed Dr. Jolley of his second termination, it sent a letter stating that (1) Regence had learned of conditions attached to Jolley's license, (2) participation with Regence required a license free of conditions, (3) Regence could terminate his employment under the at-will provision of the practitioner agreement, and (4) Regence was so terminating his employment.
¶ 30 Dr. Jolley acknowledged in his declaration supporting his summary judgment motion that "I was being terminated under the `at will' provision of the Practitioner Agreement and for conditions on my license." II CP at 353. When Dr. Jolley asked for clarification and asserted retaliation, Regence responded again that it was terminating Dr. Jolley at will.
¶ 31 To the extent that Dr. Jolley contends that the at-will termination fails if there is a reason supporting it, his argument fails. As mentioned above, having reasons for an at-will termination does not convert it to a termination "for cause," because an at-will employee can be terminated "for no cause, good cause or even cause morally wrong." Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 226, 685 P.2d 1081 (1984). We hold that Regence provided Dr. Jolley with notice of the reasons it chose to terminate him.

B. Opportunity to Be Heard
¶ 32 Dr. Jolley next contends that Regence denied him the opportunity to present evidence that Regence credentialed numerous physicians with conditions on their licenses. He cites 16 providers credentialed between 2001 and 2005 that allegedly were more culpable than Dr. Jolley. He asserts that Regence erred by denying him the opportunity afforded other physicians, namely, "discretion as to whether he may continue as a Regence provider despite conditions on his license." Br. of Appellant at 21. Again this is incorrect.
¶ 33 Dr. Jolley's letter responding to his second termination asserted that "many Regence providers have conditions on their licenses." II CP at 239. In his letter asking for a level two appeal hearing, Dr. Jolley again argued that Regence should reinstate him because it had allowed other doctors to remain employed despite conditions on their licenses and that the MQAC proceedings had never implicated his quality of patient care.
¶ 34 Dr. Mark Rattray, chief medical officer for Regence and chairperson of the level two appeal committee provided a declaration discussing Dr. Jolley's conditions and stating that Dr. Jolley's MQAC conditions were unique, both in the 10-year duration and in the severity of the behavior, which involved sexual misconduct on multiple occasions.
¶ 35 Hattie Good-Clabby, manager of the provider credentialing and quality review department at Regence, provided a declaration stating that Regence reviews each provider that has disciplinary actions taken against their licensure on a case-by-case basis. She also cited the length and severity of Dr. Jolley's conditions. Further, she reviewed the alleged 15 cases[5] in which Regence contracted *1272 with providers with conditions and determined that Regence did not contract with eight and, that of the remaining seven providers, the longest duration of any condition was two years, as opposed to 10 years for Dr. Jolley.
¶ 36 The record reveals that both Regence's internal appeals process and the arbitration provided Dr. Jolley with ample opportunity to be heard and that he was, in fact, heard. There was no error with the trial court's decision to grant summary judgment on this issue because Regence provided fair review.

II. CPA Claim
¶ 37 Second, Dr. Jolley asserts that Regence's failure to comply with its own appeals process violated the Washington CPA and that the trial court erred by dismissing his claim on summary judgment. The CPA prohibits any unfair or deceptive act or practice in trade or commerce that impacts the public interest and causes injury to a party's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 785, 719 P.2d 531 (1986).
¶ 38 Dr. Jolley argues that he is able to assert such a claim based on Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp., 122 Wash.2d 299, 311, 858 P.2d 1054 (1993), which held that a physician whose reputation is injured has standing to sue a drug company that engaged in an unfair or deceptive trade practice by failing to warn the physician of the dangers of its drug about which it had knowledge. But Dr. Jolley's assertion here is not the same as that made in Fisons.
¶ 39 The Fisons court addressed the physician's standing to sue under the CPA, noting that:
[I]n examining the nature of the relationship between a drug manufacturer, a prescribing physician and a patient, it is the physician who compares different products, selects the particular drug for the ultimate consumer and uses it as a tool of his or her professional trade. Under the learned intermediary doctrine, a drug company fulfills its duty by giving warnings regarding prescription drugs to the physician rather than to the patient. This unique relationship results in the physician being comparable to the ordinary consumer in other settings.... The physician, therefore, is a logical person to be the "private attorney general" under RCW 19.86.090. We therefore conclude that [the physician] did have standing to bring a CPA claim.
Fisons, 122 Wash.2d at 313, 858 P.2d 1054 (footnotes omitted). Dr. Jolley's case here does not implicate the same type of relationship described in Fisons, and we hold that he lacked standing to bring his CPA claim. Even if we considered his claim, it would fail because Dr. Jolley is unable to establish either an unfair or deceptive act or practice or that such a practice affected the public interest.
¶ 40 Dr. Jolley asserts that Regence's actions in his case were unfair and deceptive because the actions have a capacity to deceive a substantial portion of the public. This argument fails because no unfair or deceptive practice existed.
¶ 41 Dr. Jolley also fails to establish that Regence's actions here have a capacity to deceive the public. "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." Hangman Ridge, 105 Wash.2d at 790, 719 P.2d 531. "However, it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." Hangman Ridge, 105 Wash.2d at 790, 719 P.2d 531. Dr. Jolley failed to establish any such likelihood here. We hold that the trial court did not err by dismissing the CPA claim.

III. Right to Judicial Remedies
¶ 42 Third, Dr. Jolley contends that the trial court's decision to adopt the arbitrator's findings of fact rendered the arbitrator's decision binding, which violated WAC 284-43-322. Dr. Jolley contends that he was entitled to a judicial remedy that included an independent fact-finding proceeding and an *1273 opportunity to present new or additional evidence and witnesses.
¶ 43 The trial court addressed this concern, ultimately finding that Dr. Jolley received a fair review. When Dr. Jolley's counsel told the trial court that it was reversible error to adopt the arbitrator's findings, the trial court explicitly stated that it was not adopting the trial court's findings and explained that it was referring to them only as evidence of one step in the fair review process. Dr. Jolley's argument fails.

IV. Additional Evidence
¶ 44 Fourth, Dr. Jolley contends that the trial court erred by finding that no reasonable jury would find that his additional evidence would have changed the outcome. He cites to his relationship as a provider for First Choice Health, which reinstated him after he presented testimony from an emergency medical physician who teaches medical history and ethics at the University of Washington Medical School. He did not present such testimony to the level one or level two panels. Dr. Jolley presented the trial court with only a declaration from his trial counsel asserting that First Choice Health rehired him following his suspension based on the ethics professor's testimony regarding the history of the doctor/patient/parent issue. The trial court considered this declaration over Regence's objection that it was hearsay. Dr. Jolley presents no logical reason explaining why he failed to present this testimony to the level one or level two panels other than that he did not know that he was terminated based on the conditions on his license. As we discussed above, Regence provided Dr. Jolley appropriate notice and the opportunity to be heard. Accordingly, this argument fails.

V. Equitable Remedy for Specific Promise
¶ 45 Finally, Dr. Jolley argues that the trial court erred by dismissing his equitable claim that Regence had a duty "to abide by promises made to employees, independent of the contractual analysis of the duties between parties." Br. of Appellant at 24. Specifically, he claims that "employers may expressly agree that the employment relationship will be terminated only pursuant to specific procedures." Br. of Appellant at 24 (citing DePhillips v. Zolt Constr. Co., 136 Wash.2d 26, 959 P.2d 1104 (1998)). To prevail on an equitable claim for breach of a specific promise for specific treatment, the employee must establish that a promise was contained in an employer policy, the employee justifiably relied on the promise, and the employer breached the promise. DePhillips, 136 Wash.2d at 36, 959 P.2d 1104.
¶ 46 But, Dr. Jolley acknowledges that the agreement here defines Regence's relationship with its providers as "independent entities." Br. of Appellant at 24. Accordingly, he cannot show that this equitable doctrine even applies in his case. Even if he could, our analysis above addressing fair review provides reason for this claim to fail.

ATTORNEY FEES
¶ 47 Both parties request attorney fees on appeal under RAP 18.1. The practitioner agreement here provides a grant of attorney fees to the prevailing party. We award reasonable attorney fees to Regence upon its compliance with RAP 18.1.
¶ 48 Affirmed.
We concur: HUNT and QUINN-BRINTNALL, JJ.
NOTES
[1] WAC 284-43-320(11) provides: "Every participating provider contract shall contain procedures for the fair resolution of disputes arising out of the contract."
[2] In the same paragraph as the requirement for dispute resolution is a section that appears to allow employment at will and termination with or without cause. WAC 284-43-320(7) states, in pertinent part: "A health carrier and participating provider and facility shall provide at least sixty days' written notice to each other before terminating the contract without cause." But Regence does not proceed exclusively under an at-will theory but, rather, under the fair hearing provision. Even though Regence terminated Jolley under the at-will provision of their contract reciting the WAC termination paragraph, Regence provided a fair hearing. We are not asked to interpret these apparent contradictory WAC provisions or address whether the at-will provider has a right to a fair hearing. Both provisions appear in Regence's contract with Jolley. Jolley argued that a fair hearing was required so that he had knowledge of the reason for the termination. Regence argued that they gave Jolley a fair hearing even though termination could be done without cause.
[3] Regence had agreed to hold the termination in abeyance pending resolution of Dr. Jolley's appeal.
[4] As an initial matter, Dr. Jolley spends much time contending that Regence did not provide a fair review of his first termination. But, Dr. Jolley prevailed on his wrongful termination claim before the arbitrator and Regence reinstated him. We need not revisit this determination.

Additionally, Dr. Jolley contends that the trial court erred by failing to hold a trial to determine whether the arbitrator's damage award for his first termination was sufficient compensation. But again, Dr. Jolley prevailed on his summary judgment motion to keep the compensation award. He never moved the trial court for a trial to determine whether the damages were appropriate. Further, Regence paid the total amount the arbitrator awarded. These arguments fail.
[5] Jolley alleged at least 16 providers had conditions on their licenses but submitted documentation on only 15.